**Bruce Evan FOSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 285–83.

Court of Criminal Appeals of Texas, En Banc.

July 11, 1984.

---

Michael P. Gibson, Dallas, for appellant.

Henry Wade, Dist. Atty., R.K. Weaver, Christopher L. Milner and Gregg Davis, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant's conviction for theft was reversed and remanded by the court of appeals in *Foster v. State*, 648 S.W.2d 31 (Tex.App.—Dallas 1983). After review of the record, we are of the opinion the court of appeals reached the correct result in finding a confession, obtained after an illegal arrest, to be inadmissible.

In its petition, the State argues the court of appeals was wrong in finding that appellant's occupation was not an "inter-

vening circumstance" attenuating the taint of an illegal arrest. Appellant was a former assistant district attorney who was, at the time of his arrest, a practicing criminal defense lawyer. Certainly a lawyer would be more cognizant than most of the significance of *Miranda* warnings, but his understanding would bear on the threshold Fifth Amendment question of the voluntariness of the confession. It is well settled that *Miranda* warnings alone do not make the "act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); see *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1981.)

■ Thus, even assuming appellant had an enlightened understanding of *Miranda* warnings, three considerations remain: (1) the temporal proximity of the arrest and confession; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of official misconduct. *Brown, Green,* supra. The fact appellant was a lawyer did not necessarily determine the time lapse between arrest and confession nor equip him for coping with official misconduct, and the record reveals no *intervening* events.

■ We note here that the court of appeals concluded that an "intervening circumstance must be something occurring after the arrest and before the confession to break any causal effect." To obviate any confusion, we point out that an event or circumstance need not actually "occur" after the arrest, but rather it must *manifest* itself so as significantly to intervene and thus attenuate the taint of an illegal arrest. See generally *Brown v. Illinois,* supra; *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); and *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

■ In this vein, the dissent argues that appellant was anxious to confess before he was arrested, and this anxiety manifested during interrogation and was thus an intervening circumstance. Judge Campbell finds appellant wished to confess because a police officer testified that while driving to the station, appellant said "he felt better now that he was caught" and he could "put all this" behind him.

However, the circumstances as a whole do not support Judge Campbell's conclusion. The fact it took several hours and many shufflings from room to room before the police obtained an inculpating statement belies the conclusion that appellant was eagerly awaiting an opportunity to confess. The record establishes that when he arrived at the central district police station, an officer attempted to interrogate him; appellant said he did not wish to make a statement; rather, he wanted to see his lawyer, Wes Reed. Sometime later, Sgt. Parker, a homicide detective who knew appellant, came to the station and explained to him that Jim Barclow from the District Attorney's Office had asked him to come over and personally talk to appellant. Appellant said he wished to speak to Wes Reed. Parker said things might not go as well if he talked to his lawyer first. Appellant said he was not interested in talking. After this conversation he was taken across the hall and left alone for about 30 minutes. Then he was taken back to Parker. Parker again said he had been in touch with Jim Barclow and he wanted to discuss the case with appellant. Appellant discussed the facts of his arrest with Parker and again said he wanted to talk to Wes Reed. Parker again said it would be better to talk to Reed later. Appellant was again taken to a room and left alone for approximately 30 minutes. Then he was taken back to Parker. Parker told him Jim Barclow was going to be in charge of the case, and "they" were more interested in getting the matter cleared up. Appellant testified he finally gave the confession because Parker told him Jim Barclow was going to handle the matter. From all this it is not reasonable to conclude appellant was "anxious to confess."

■ The above rendition also serves to underscore the fact appellant's status as a lawyer did not serve to protect him from

police overtures and tactics. Indeed, it may have worked against him because the police apparently made him feel as if he were one of them, and his arrest was merely a "matter that needed to be cleared up." Because he had been an assistant district attorney, and Jim Barclow's name was used in the manner discussed *ante,* the police wanted him to sense he was still part of the law enforcement fraternity. In sum, the approaches were ingratiatory in nature, calculated to raise false hopes in appellant.

Further, his occupation could have hardly prevented the following: After the illegal arrest and while seated in the police unit at the scene, appellant briefly spoke through a window of the unit with an attorney about obtaining bail. Then, as the court of appeals remarked, he was driven "to the 'central district' police station, a different location from the police headquarters where the interrogation officer normally worked," at which place he was first interrogated. Accordingly, Reed, the attorney with whom he had spoken, appellant testified, "could not locate me." Thus we see that no matter how well trained in the law an accused may be, such training does not prevent the police from frustrating efforts to assert constitutional rights.

 Therefore, we find the court of appeals was correct in concluding that the State did not meet its burden of showing that appellant's statements, hard on the heels of an illegal arrest, were admissible.[1] However, the court of appeals did not determine whether the admission of the questioned confession constituted prejudicial error requiring reversal of appellant's conviction. See *Jordan v. State,* 576 S.W.2d 825 (Tex.Cr.App.1979). Thus, we remand this case to the court of appeals for that determination.

CAMPBELL, Judge, concurring and dissenting.

Discretionary review was granted in this cause to determine whether appellant's

confession was illegally obtained as based on an illegal arrest, and if so, was the illegality sufficiently attenuated to remove the taint under *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and its progeny? The majority answered this question adversely to the State, citing *Brown,* supra, *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1981).

In *Brown,* supra, the United States Supreme Court established four factors in order to *facilitate*[1] the determination as to whether or not a confession would be excluded as the fruit of an illegal arrest:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest; and

(3) the presence of intervening *circumstances;* and particularly

(4) the purpose and flagrancy of the official misconduct.

The problem insofar as this case is concerned, was created in *Brown,* when Justice Blackmun went on to conclude:

"Brown's first statement was separated from his illegal arrest by less than two hours, and there was no intervening *event* of significance whatsoever."

Further compounding the difficulty, Justice Brennan in *Dunaway,* supra, observed:

"No intervening *events* broke the connection *between petitioner's illegal detention and his confession.*"

It is this commingling of the terms "event" and "circumstances" in both *Brown* and *Dunaway,* that obviously led both the Court of Appeals and the majority of this Court to conclude as they did that no intervening *event* occurred between appellant's arrest and his subsequent giving of confes-

---

1. Heavy is that burden, but the Supreme Court has insisted the State must establish that "intervening *events* broke the connection between illegal detention and confession," *Dunaway v. New York,* 442 U.S. 200, 219, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). (Emphasis added.)

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

sions. The word "event" has been defined as "something that happens; occurrence, a noteworthy happening."[2] The word "circumstance" can mean "a state of affairs."[3]

It is interesting to note that the majority opinion instantly, in an apparent attempt to resolve this difficulty, states: "To obviate any confusion, we point out that an event or circumstance need not actually 'occur' after the arrest, but rather it must manifest itself so as significantly to intervene and thus attenuate the taint of an illegal arrest." [citations omitted] at pg. 509. I concur in this reasoning wholeheartedly, but I observe that later in its opinion, the majority, in a footnote, returns to the notion that an *event* must break the "connection between illegal detention and confession." at pg. 510. I would surmise that these two concepts could peacefully coexist within our jurisprudence if we would adopt the analogy of Justice Stevens in his concurring opinion in *Dunaway*, supra, i.e., that a confession may be motivated by a *prearrest event* such as a visit with a minister, and I urge my brethren to do so.

In *Gant v. State*, 649 S.W.2d 30 (Tex.Cr. App.1983), the author of the majority opinion in the instant case, finding that the taint of the illegal arrest was attenuated, observed that:

"Thereafter, as we understand it, appellant started talking about events leading up to the killing and a police record secretary attempted to write it down in longhand, but when appellant became dissatisfied with that procedure he volunteered to and did proceed to write the rest of his statement in his own words— consuming three-and-a-half legal size pages ...."

It is obvious from a reading of *Gant* that Judge Clinton found it significant that the defendant was *anxious to confess.* It is also apparent that this was one of the factors considered in determining that the taint of the illegal arrest was attenuated. But it is certainly not apparent from the

opinion in *Gant,* supra, that the defendant developed this desire to confess between the *time of arrest and the giving of the confession.*

Even more compelling is this Court's decision in *Coleman v. State,* 643 S.W.2d 947 (Tex.Cr.App.1982). In *Coleman* the defendant was arrested at approximately 1:00 a.m. and was handed a copy of the arrest warrant. He was then given his *Miranda* warnings. On the way to the police station the defendant started to cry and ask if police found the body. The arresting officer asked the defendant to remain quiet and wait to talk about it at the police station. On the way to the police station the defendant sobbed and said: "I didn't want to do it," or "He made me do it." The arresting officer asked the defendant if he would show the police where the victim and the murder weapon were located. The defendant led the police to the murder weapon and started to explain what had happened. Later at the police station the defendant gave a statement admitting he shot the deceased. The statement was concluded at 6:55 a.m. Judge Dally, writing for a plurality, opined:

"In the case at bar the appellant had been given the Miranda warning several times before he actually made his statement. He indicated he understood his rights and waived them. The time period from the arrest until the confession was completed was only about five hours. The only intervening *circumstance* was the search for the body and weapon. However, in contrast with Brown, Dunaway and Taylor, the police officers in the case at bar had probable cause to arrest the appellant and they were not engaged in purposeful and flagrant official misconduct.

. . . .

*"Additionally, the appellant's initial remarks and other statements were not initiated through interrogation but*

---

**2.** See Webster's Ninth New Collegiate Dictionary, page 430.

**3.** See Webster's Ninth New Collegiate Dictionary, page 242.

*were spontaneous remarks by the appellant...*"

This Court concluded that the confession was not obtained as a result of the unlawful detention of the defendant.

Although not labeling it as such, it is apparent that Judge Dally found it to be significant that the defendant in *Coleman* was *anxious to confess,* and this anxiety was considered to be an intervening circumstance. Certainly it cannot be said that the oral confession *itself* was somehow an intervening circumstance as that term has been used in *Brown* and its progeny.

The facts in the instant case are strikingly similar to those in *Coleman,* supra. At a pretrial hearing on a motion to suppress the written confession of the appellant, a Sgt. Parker with the Dallas Police Department testified about the interrogation and subsequent confessions given by the appellant. Immediately after the prosecution and the appellant's attorney concluded their examination of Sgt. Parker, the trial judge conducted his own examination of Parker. [SF. pp. 30–31.]

"THE COURT: Let me ask you what the demeanor of Mr. Foster was. Was he nervous, upset; cool, calm, collected?

"THE WITNESS: He was very relaxed and at ease when he got there, Judge. He was very friendly, casual.

"He—on the way to the officer there, he said 'I feel even better now;' said *'I'm really glad I got caught, and I feel better that I am going to put this behind me'* and he seemed very relaxed.

"THE COURT: Didn't seem to be upset because of where he was: a lawyer,[4] ready to be getting put in jail or anything of that nature?

"THE WITNESS: No, sir. He told me that he had called a lawyer, and he was sure they were going to come down and make his bond."

Thus, as in *Coleman,* the appellant expressed a desire to confess to the crime

even before any formal confession was obtained by any peace officer. This statement by the appellant was shown to have been a spontaneous statement, not in response to any interrogation, and almost identical to that in *Coleman,* supra.

In view of appellant's desire to "put this behind me," can it be said that there is any rational nexus between the arrest of the appellant and the subsequent giving of both oral and written confessions?

The majority would concede that this appellant, being a criminal lawyer, "would be more cognizant than most of the significance of *Miranda* warnings, but this understanding would bear on the threshold Fifth Amendment question of the voluntariness of the confession." at pg. 509. Carrying this interesting exercise in speculatory gymnastics to its logical conclusion, the appellant, while in law school, fared nicely in Fifth Amendment studies, but staggered to some degree in his pursuit of the elusive Fourth Amendment.

I believe that the trial judge in the case sub judice went too far in ruling that, because the appellant was a lawyer, such constituted an intervening circumstance that, without more, attenuated the taint of the illegal arrest. I submit that this status is *a circumstance* which may be considered, among many others. The majority opinion in *Brown,* supra supports the notion that the four factors elicited are not talismanic in nature, when Justice Blackmun opines: "No single fact is dispositive."

To the holding of the majority that an event or circumstance, under *Brown* and its progeny, need not actually occur after the arrest, I concur. To the footnote in the majority that further obfuscates and detracts from the concept ante, and to the refusal of the majority to recognize appellant's status as a criminal lawyer as a circumstance of attenuation under *Brown,* I dissent.

TOM G. DAVIS, W.C. DAVIS and McCORMICK, JJ., join in this opinion.

---

4. The record reflects that the appellant was a licensed attorney, practicing *criminal law* as a private practitioner, and had received consider-

able experience as an assistant district attorney in the Dallas County District Attorney's Office.