**Alphonso Percival DARDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–319–CR.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 7, 1989.
Discretionary Review Refused
April 4, 1990.

Ken McLean, Houston, for appellant.

John D. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before NYE, C.J., and UTTER and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant guilty of aggravated sexual assault. The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. By his sole point of error, appellant alleges the trial court committed reversible error by overruling a motion to suppress his written statement. Appellant contends the written statement was the product of an illegal seizure, and there were no attenuating circumstances to distance the statement from the alleged illegal arrest. We affirm the judgment of the trial court.

On January 22, 1988, a man forced his way into a Houston apartment where he sexually assaulted and stabbed a nine-year-old girl and her eight-year-old female playmate. As he left the apartment, the girls heard the assailant say, "I guess they are dead." The Houston television media broadcasted several composite drawings of the assailant with their coverage of the crime. The media coverage prompted several phone calls identifying possible suspects. One such call identified a man named Alphonso as the assailant and provided a work address.

On January 24, 1988, Houston Police Officer Billy Aldridge, the officer assigned to the sexual assault case, investigated the supermarket where "Alphonso" worked. The store manager identified appellant as an employee and provided Aldridge with appellant's home address. Appellant was seen leaving the store after Aldridge left and did not return for work the following day.

On January 25, 1988, Officer Kyle Evans began surveillance of appellant's apartment from approximately 5:00 p.m. to 8:00 p.m. At approximately 8:00 p.m., Aldridge and his partner, Officer Michael Martin, visited the apartment where appellant lived. The officers had with them a composite drawing of the assailant. At that time, no probable cause existed to arrest anyone regarding this case nor was there any warrant issued.

The officers were admitted into appellant's apartment where they introduced themselves to appellant, his wife and his mother-in-law. The officers explained they had information that appellant resembled a composite sketch of the assailant shown on television in "a case that they might be familiar with involving an assault on two young girls." Upon hearing that statement, appellant began crying uncontrollably, stating along with other protestations of innocence, that he did not try to kill those little girls. The officers asked appellant to accompany them to the station for participation in a lineup, explaining that he was free to refuse the request because he was not under arrest. Appellant consented to the request and went to the police car voluntarily. At the car, Officer Martin read appellant his rights pursuant to Texas

statute and *Miranda,* and advised him that he was not under arrest and could leave at any time.[1] The officers questioned appellant to verify that he understood these admonishments. The officer's vehicle was an unmarked car which did not have a barrier to separate passengers in the back seat from the driver. Furthermore, the car was not equipped with doors which prevent a passenger in the back seat from opening the door and leaving. Appellant was advised he would be handcuffed until they reached the station pursuant to police department policy for the safety of both the officers and appellant. Appellant neither protested this action, nor did he ask to leave.

Upon arriving at the police station, Officer Aldridge took appellant before a magistrate. The magistrate advised appellant of his rights, told him he was not under arrest and could leave at any time, and verified that appellant understood those facts. After the admonishment, Aldridge took appellant's photograph. Officer Martin prepared a photo array including appellant's photo. Martin then took the photo array to the hospital for both victims to examine. Aldridge advised appellant yet again that he was free to leave at any time because he was not under arrest.

Officer Aldridge remained at the station with appellant. During that time, appellant signed a consent form allowing sample collections of his hair, saliva and blood. Aldridge catalogued appellant's hair and saliva samples; however, the blood sample required professional extraction. Consequently, Aldridge and Officer Evans handcuffed appellant and prepared to drive him in the unmodified police car to the Harris County Jail for a medical technician to extract a blood sample. While appellant and the two officers were in the police station garage on the way to the jail, Officer Martin called Aldridge on the car radio telling him to contact him at once. Aldridge used the telephone in the police garage to call his partner. Martin told Aldridge that the complainants had identified appellant.[2]

Aldridge testified that he chose not to arrest appellant at that time because appellant was still agitated and would cry intermittently without provocation. He testified he feared that appellant, should he be arrested in the car, would react adversely in a heightened emotional state and jeopardize the safety of all present. For that reason, Aldridge chose not to arrest appellant until they returned to the sixth floor office in the police station. Aldridge did testify appellant was not free to leave after the telephone conversation with Officer Martin. Furthermore, appellant was not aware of the contents of the officer's conversation. He did not indicate he wished to leave or withdraw his consent during the approximately 30 minute interval from the Aldridge's phone call to their return to the station.

Returning to the sixth floor office, Aldridge told appellant that he had been identified from the photo array and that he was under arrest. Aldridge then "reminded" appellant about the assailant's parting comment to which appellant became very upset. Appellant was apprised of his rights yet again and asked if he understood them. Appellant never asked for a lawyer although he stated he understood his warnings.

Because Aldridge couldn't "establish a rapport" with appellant Officer Evans continued the interview. Evans calmed appellant and escorted him into an interrogation room to take appellant's statement. Evans read appellant his rights before beginning the interview. Appellant neither indicated he wished to discontinue the interview nor requested an attorney. Officer Evans finished taking appellant's statement at approximately 11:20 p.m. A formal warrant

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tex.Code Crim. Proc.Ann. art. 38.22, § 2 (Vernon 1979).

2. The victim's identification of appellant from the photo array was not admitted into evidence. Although one of the girls identified appellant, the other one overheard the identification. Therefore, the second victim's opinion of the photo array was arguably tainted. Additionally, witness Rinando's identification of appellant from the photo array was inconclusive and not introduced at trial.

for appellant's arrest was not issued until the following day, January 26, 1988. The trial court held a hearing outside the presence of the jury to determine the admissibility of appellant's written statement. The court found the confession was voluntary and admissible into evidence.

■ A warrantless arrest is illegal unless the State proves that a statutory exception to the warrant requirement applies. *Dejarnette v. State*, 732 S.W.2d 346, 349–50 (Tex.Crim.App.1987); *Wilson v. State*, 621 S.W.2d 799, 803–4 (Tex.Crim.App.1981); *Dill v. State*, 697 S.W.2d 702, 705 (Tex. App.—Corpus Christi 1985, pet. ref'd). In the instant case, the State justifies the arrest, claiming appellant's escape was imminent with no time to procure a warrant. The State relies on Article 14.04 of the Texas Code of Criminal Procedure as the relevant statutory exception to the warrant requirement. This statute states:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Tex.Code Crim.Proc.Ann. art. 14.04 (Vernon 1977).

■ Officers making warrantless arrests under Article 14.04 must believe that the offender is about to escape. *Stanton v. State*, 743 S.W.2d 233, 235 (Tex.Crim.App. 1988); *King v. State*, 631 S.W.2d 486, 493 (Tex.Crim.App.1982); *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Crim.App.1973). The suspect need not *in fact* be escaping nor need there *in fact* be no time to procure a warrant. *Maixner v. State*, 753 S.W.2d 151, 154 (Tex.Crim.App.1988). The general rule in this situation is that there must be some evidence amounting to satisfactory proof, either related by a credible person to an officer or observed by the officer, indicating the defendant was about to escape so that there was no time to procure a warrant. *Stanton*, 743 S.W.2d at 236; *Dejarnette*, 732 S.W.2d at 350; *Fry v. State*, 639 S.W.2d 463, 476 (Tex.Crim.App.1982).

■ In the instant case, no evidence was presented which shows appellant was about to escape. Officer Aldridge testified that appellant's concealment in his apartment for 2 days following the initial police visit to the supermarket where he worked indicated an intent to hide from the authorities. Additionally, although Aldridge believed appellant "had no ascertainable ties to the community" which would restrain his flight, his mother and wife lived in Houston. Furthermore, appellant's emotional outburst in the apartment made Aldridge suspect appellant "would talk to the District Attorney" before leaving the station. These factors do not show that appellant was about to escape or even intended to escape. No act was committed in Aldridge's presence nor did a credible person represent to Aldridge any facts which indicated appellant was about to escape.

Under the circumstances, we believe the State made a warrantless arrest which did not fit within the Article 14.04 exception. Probable cause to arrest existed, but the officers acted hastily by not procuring a warrant. Appellant's voluntary and peaceful cooperation throughout the investigation could not be construed as an escape attempt. Only when Aldridge confronted appellant with the fact of his lineup identification could a reasonable person expect appellant might flee if given the opportunity. The State cannot claim in this case that exigent circumstances required circumventing the warrant requirement. There was adequate time during appellant's trip to the jail for the blood sample for one of the officers to have procured a warrant. There was no evidence to support the imminent escape claim. Article 14.04 clearly does not apply to these facts. As a result, appellant's arrest was illegal.

■ The next issue is whether appellant's confession was a product of the illegal arrest. Four factors are employed to determine whether a confession following an illegal arrest is sufficiently attenuated to permit the use of the confession at trial. These factors are:

1) whether *Miranda* warnings were given;

2) the temporal proximity of the arrest and the confession;

3) the presence of intervening circumstances; and

4) the purpose and flagrancy of the official misconduct.

*Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *Juarez v. State,* 758 S.W.2d 772 (Tex.Crim.App.1988); *Bell v. State,* 724 S.W.2d 780 (Tex.Crim. App.1986); *Huerta v. State,* 709 S.W.2d 21 (Tex.App.—Corpus Christi 1986, no pet.). These factors are not exhaustive, and no single factor is dispositive. *Juarez,* 758 S.W.2d at 780. Rather, each factor is applied to the facts of the instant case to determine whether a confession was a product of a defendant's free will. *Juarez,* 758 S.W.2d at 780.

## MIRANDA WARNINGS

██ While it is clear that merely reading *Miranda* warnings will not attenuate the taint of an illegal arrest, the warnings indicate whether the confession was obtained as an exploitation of an illegal arrest. *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982); *Juarez,* 758 S.W.2d at 781; *Maixner,* 753 S.W.2d at 151; *Barber v. State,* 737 S.W.2d 824, 832 (Tex.Crim.App.1987). In the instant case, appellant received his *Miranda* warnings at least 3 times prior to his formal arrest. He indicated he understood these warnings each time they were read to him. It is clear that appellant was sufficiently familiar with his legal rights before his arrest due to the repeated cautiousness of the investigating officers. Therefore, it is reasonable to believe appellant chose to disregard those rights and make a post-arrest statement.

## TEMPORAL PROXIMITY

██ The second factor in our analysis is the temporal proximity of the arrest to the confession. This factor "is apparently based on the reasoning that the shorter the time, the more likely it is that the taint of the illegal arrest or stop has not been purged." *Juarez,* 758 S.W.2d at 781. However, in *Juarez,* the Court of Criminal Appeals declared unsound the assumption that the mere passage of time between an arrest or stop and a confession or consent to search increased the likelihood of the subsequent confession being untainted. *Juarez,* 758 S.W.2d at 781. Furthermore, the lack of a significant intervening time period is not, by itself, sufficient to mandate suppressing evidence "for want of sufficient attentuation." *Juarez,* 758 S.W.2d at 781. The relevant ingredient of this factor seems to be the circumstances which bring about a defendant's confession. "A shorter lapse of time will be tolerated when the circumstances of the detention are less severe." *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Juarez,* 758 S.W.2d at 781.

The temporal proximity factor is accorded the least weight among the four. *Maixner,* 753 S.W.2d at 156; *Barber,* 737 S.W.2d at 832; *Bell,* 724 S.W.2d at 788. In the present case, appellant completed his statement approximately one hour and 20 minutes after his arrest. Although there was no evidence of coercion or violence inducing appellant to make this confession, Officer Aldridge aggressively interrogated appellant immediately following the arrest. Aldridge, believing he "lost his rapport" with appellant during the interrogation, then relinquished the duty to Officer Evans. Appellant and Evans then entered an interrogation room where appellant subsequently made his statement. The short time between the arrest and his confession suggests appellant did not have any time to think about the consequences of confessing. There is no evidence showing that appellant was accorded time to reflect upon his situation following his arrest. Absent intervening circumstances affecting the confession, this factor weighs in appellant's favor.

## INTERVENING CIRCUMSTANCES

██ The third factor looks for events which suggest the confession was not a direct product of the arrest. An "interven-

ing event" is not necessarily chronological; rather, it may occur before the arrest. *Foster v. State*, 677 S.W.2d 507, 511 (Tex. Crim.App.1984). In *Foster*, the Court of Criminal Appeals suggested a pre-arrest event motivating a confession could be a visit with a minister. *Foster*, 677 S.W.2d at 511. Another example given is the defendant who decides to confess before his arrest. *Foster*, 677 S.W.2d at 511. A third example could be the defendant's spontaneous inculpatory remarks made during the ride to the police station. *Id.*

In the instant case, appellant's pattern of cooperation with the police throughout the investigation are significant intervening events. Aldridge testified appellant was told from the outset that any evidence he submitted to the police could result in his arrest, yet appellant freely and voluntarily donated the evidence requested. The record repeatedly shows appellant knew his rights and that he could leave the station at any time but voluntarily chose to remain. Appellant never offered any resistance to the police investigation. His behavior indicates he disregarded the possibility of arrest when he donated a photograph and physical specimens which he could have refused to give. We find appellant knew his cooperation in the investigation would result in his arrest for the instant crimes. The post-arrest statement was neither coerced nor a product of duress. Appellant's statement was merely an extension of his pre-arrest decision to further the investigation even though it meant he was providing self-incriminating evidence.

### OFFICIAL MISCONDUCT

The fourth and final factor in this analysis inspects the purpose and flagrancy of the official misconduct. This factor may be the most important of the four factors. *Maixner*, 753 S.W.2d at 157; *Self v. State*, 709 S.W.2d 662, 668 (Tex.Crim.App.1986). The instant case shows there was no constitutional violation because appellant was arrested after the police obtained probable cause. The misconduct in the instant case lies in the failure to adhere to Texas statutory requirements in making the arrest. We must decide whether the police officers

knowingly violated the law to effect an arrest.

The evidence shows Aldridge subjectively believed appellant would escape if given an opportunity. In his testimony, Aldridge clearly articulated the factors he believed indicated appellant was about to flee. It is difficult to say the police acted purposefully and flagrantly to make an illegal arrest. If anything, their conduct showed they suspected appellant's guilt and tried hard to avoid mistakes which would render the evidence they received from appellant inadmissible. Appellant was treated solicitously prior to his arrest. There is no evidence of force or coercion to get appellant's cooperation. The police took repeated precautions by telling appellant of his right to refuse to participate in each part of the investigation. Appellant knew from the beginning that he was a possible suspect for a specific crime.

The evidence indicates Aldridge and his fellow officers had no purpose other than the lawful investigation of a crime. Nothing during the investigation was designed to confuse or frighten appellant into compliance or to confess. This warrantless arrest, although not within a statutory exception, was not made in flagrant disregard for appellant's rights which would invalidate the entire investigation.

■ After considering all of the evidence as it applies to the four factors stated above, we conclude appellant's statement was not the product of an illegal arrest. There was abundant evidence of appellant receiving his *Miranda* warnings. Appellant's pattern of voluntary cooperation in the criminal investigation indicates a decision to waive his right against self-incrimination. The circumstances surrounding the post-arrest statement shows appellant had continued his cooperative pattern. This pattern was an intervening circumstance distancing the confession from the illegal arrest. Finally, there is no evidence the police officers conducted their investigation or the arrest to purposefully and flagrantly deny appellant his legal rights. We agree there was little time between the arrest and statement; however, appellant

freely and knowingly waived his rights following his arrest as he had during the pre-arrest investigation.

Because the illegal arrest as such did not produce appellant's inculpatory statements, we find appellant's statement was not obtained by exploiting the illegal arrest. Accordingly, we hold that the trial court correctly admitted the statement into evidence. Appellant's point of error is overruled. The judgment of the trial court is AFFIRMED.