Weldon WOODS, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–90–073–CR.

Court of Appeals of Texas,
Texarkana.

March 12, 1991.

Edgar A. Mason, Dallas, for appellant.

Robert P. Abbott, Asst. Dist. Atty., Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Weldon Woods appeals from a conviction of burglary of a vehicle. Primarily, he contends that the trial court erred in overruling his motion to suppress evidence produced by an illegal search and arrest, and that the evidence is insufficient to support his conviction. We find sufficient evidence to support the conviction, but conclude that evidence seized as a product of an illegal arrest should have been excluded. We therefore reverse and remand the case for trial.

On the night of February 18, 1989, Highland Park police placed a radar detector inside a parked car. The radar detector contained a tracking device that transmitted a radio signal. The signal was activated at 12:44 in the morning when someone broke into the parked car and took the radar detector. The police tracked the signal from the device to Woods' home and arrived there fifteen minutes after the signal was activated.

Woods lived at the house with his two brothers and his father and mother, Dr. and Mrs. Channing Woods. When officers knocked on the door, Woods' brother, Preston, came to the door. Police officers told him that they were looking for the stolen radar detector and asked permission to search the premises. Preston woke his father, who was asleep upstairs.

Dr. Woods came to the door a few minutes later. The officers requested permission to search for the radar detector containing the tracking device, which had stopped sending its signal. After the police told Dr. Woods that if he did not consent to the search they would obtain a search warrant, he consented.

One of the officers stayed downstairs with the Woods family while the other officers searched the house. The search proceeded slowly because, in the words of one officer, the residence was a "maze of property." Officers testified that various items of personal property were "on every bed, stacked wall-to-wall," and that Weldon Woods' personal bedroom was cluttered with numerous wallets, vehicle radio equipment, and other radios and electronic equipment.

At about 3:30 a.m., police called a magistrate, Judge Pat Robertson, to the scene. The search for the stolen device continued unsuccessfully until about 6:00 a.m., when Woods led an officer to the basement of the home and retrieved the radar detector from underneath a workbench.

We must determine whether the trial court improperly overruled Woods' motion to suppress the radar detector because it was the product of an illegal arrest. The

State contends that Woods was not arrested, but only justifiably detained. In order to properly consider this contention, we must first consider whether Woods was, in fact, arrested. Then we must decide whether that arrest was lawful. Finally, if we find that the stolen item was the product of an unlawful arrest, we must determine whether Woods' production of that item was sufficiently attenuated from the arrest to permit its introduction.

▮▮▮ We first consider whether Woods was actually arrested as he maintains, or only justifiably detained as argued by the State. In determining whether an arrest has been made, the test is whether, in view of all relevant circumstances, there has been such a display of official authority that a reasonable person would believe he was not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Daniels v. State,* 718 S.W.2d 702, 706 (Tex.Crim. App.1986). A person is arrested when he has been actually placed under restraint or taken into custody by an officer. *Livingston v. State,* 739 S.W.2d 311, 327 (Tex. Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); Tex.Code Crim.Proc.Ann. art. 15.22 (Vernon 1977). An arrest is complete when the person's liberty of movement is restricted or restrained. *Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Crim.App.1987).

Woods and his brother were given *Miranda* [1]-type warnings shortly after their father consented to the search. Officer H.D. Gilliam was assigned the duty of securing Weldon Woods and the rest of the family in the downstairs area of the home while the other officers conducted the search. Gilliam testified that he did not arrest anyone, but only stood by with the family in the downstairs area. However, he also testified that neither of the Woods brothers was free to leave. Captain Ben Milner, the officer in charge of the search, also testified that Woods was not free to leave.

Woods testified that he and his brother were placed under arrest after the police obtained consent to search the house. When questioned further concerning what he meant by arrest, Woods stated that "[w]e were read our Miranda rights and told that we could not leave the room." He also testified that he believed he was not free to leave. Additionally, Dr. Woods testified that his sons were both read their rights and then told "You're under arrest." Woods was placed under restraint within the meaning of Article 15.22.[2] Accordingly, we conclude that Woods was arrested.

▮▮▮ Woods' arrest was made without a warrant. In determining whether the warrantless arrest was lawful, we begin with the general premise that, subject only to specific statutory exceptions, all warrantless arrests are per se unreasonable.[3] Thus, the State, in this case, as in all cases where the police arrest without a warrant, bears the burden of establishing the legality of the warrantless arrest. *See, e.g., Randall v. State,* 656 S.W.2d 487, 490 (Tex. Crim.App.1983); *Hooper v. State,* 533

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** Tex.Code Crim.Proc.Ann. art. 15.22 (Vernon 1977) provides as follows: "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."

**3.** The constitutions of the United States and of this state require all arrests to be made pursuant to a warrant. U.S. Const. amend. IV; Tex. Const. art. I, § 9. Any arrest made without a warrant must, therefore, fall within one of the limited statutory exceptions to the warrant requirement. *See* Tex.Code Crim.Proc.Ann. arts. 14.01, 14.02, 14.04 (Vernon 1977) & art. 14.03 (Vernon

Supp.1991) (lists statutory exceptions to requirement that warrant is required for all arrests); *see also DeJarnette v. State,* 732 S.W.2d 346, 349 (Tex.Crim.App.1987) (general rule requires police to always obtain warrant prior to taking someone into custody); *see, e.g., Johnson v. State,* 722 S.W.2d 417, 421 (Tex.Crim.App.1986) (arrest without warrant justified when suspect found in suspicious place); *Willis v. State,* 669 S.W.2d 728, 730–31 (Tex.Crim.App.1984) (warrantless arrest justified when offense committed within officer's view); *but see Honeycutt v. State,* 499 S.W.2d 662, 665–66 (Tex.Crim.App. 1973) (arrest not justified where no showing that suspect about to escape); *see generally* Reamey & Harkins, *Warrantless Arrest Jurisdiction in Texas: An Analysis and a Proposal,* 19 St. Mary's L.J. 857, 860–61 (1988).

S.W.2d 762, 767 (Tex.Crim.App.1976) (opinion on rehearing); *McVea v. State,* 635 S.W.2d 429, 432 (Tex.App.—San Antonio 1982, pet. ref'd); *see generally* Reamey & Harkins, *Warrantless Arrest Jurisdiction in Texas: An Analysis and a Proposal,* 19 St. Mary's L.J. 857, 860–61 (1988). We conclude that the State failed to meet its burden of showing that Woods' arrest was made pursuant to any statutory exception. His arrest was, therefore, unlawful. Thus, Woods' act in retrieving the stolen device, which was tantamount to a confession, should have been excluded from evidence unless such act was sufficiently attenuated from the arrest that the causal connection was broken and the act was independent of the illegal arrest. *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

██ In deciding whether a confession or evidence obtained after an illegal arrest is sufficiently attenuated from the arrest to permit its introduction, we consider these four factors: whether *Miranda*-type warnings were given; the temporal proximity of the arrest and the production of the evidence; the presence of any intervening circumstances; and the purpose and flagrancy of any official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *Self v. State,* 709 S.W.2d 662, 666 (Tex.Crim. App.1986). Since *Miranda*-type warnings were given and the matter of any official misconduct is debated by the parties, our decision is limited to the remaining two factors.

██ Before moving to the discussion of the relevant factors, it is well to keep in mind where the burden of proof lies with regard to determining whether the evidence is admissible. There is an affirmative burden on the *State* to present evidence to show that the volunteered evidence was not the product of an illegal arrest. *Beasley v. State,* 674 S.W.2d 762, 769 (Tex.Crim.App. [Panel Op.] 1982); *see also Taylor v. Alabama,* 457 U.S. 687, 691–92, 102 S.Ct. 2664, 2667–68, 73 L.Ed.2d 314 (1982). We now look at the relevant factors as shown by the evidence presented.

### Temporal Proximity

██ There was a five-hour gap between the arrest and production of the stolen radar device. What the time gap means is uncertain. However, because this was a continuing illegal arrest, the gap could be considered short. In *Gregg v. State,* 667 S.W.2d 125, 129 (Tex.Crim.App.1984), the court rejected the State's argument that a lapse of six hours between the time of arrest and the defendant's voluntary statement was sufficient to remove the taint where the defendant was continuously in police custody and subject to interrogation and unrepresented by counsel. *Gregg v. State,* 667 S.W.2d at 129; *accord Taylor v. Alabama,* 457 U.S. at 692–93, 102 S.Ct. at 2668–69. Even if the gap of five hours is viewed as considerable, we recognize that *temporal proximity* is "generally not a strong determining factor." *Bell v. State,* 724 S.W.2d 780, 788 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). However, the time between the arrest and the confession may be an ambiguous factor. If there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one. *Dunaway v. New York,* 442 U.S. 200, 220, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824 (1979) (Stevens, J., concurring). The State has not shown that the evidence is attenuated from the illegal arrest by reason of the time between the arrest and production of the evidence. We then look to see whether the State showed any remarkable intervening circumstances which would purge the taint of the illegal arrest. *Bell v. State,* 724 S.W.2d at 788–89.

### Intervening Circumstances

██ We consider whether the presence of the magistrate at the Woods' residence was an intervening circumstance. However, there is no indication that the magistrate acted in his official capacity. On the contrary, it appears that he was acting at the invitation and direction of the police officers. The magistrate's mere presence

does not constitute an intervening event that would assist the State in establishing, as is its burden, "that intervening *events* broke the connection between illegal detention and confession." *Foster v. State,* 677 S.W.2d 507, 510 n. 1 (Tex.Crim.App.1984), *citing Dunaway v. New York,* 442 U.S. at 219, 99 S.Ct. at 2260.

In *Green v. State,* 615 S.W.2d 700, 704 (Tex.Crim.App. [Panel Op.] 1980), the defendant was arrested in the middle of the night and taken to the sheriff's office, which was located in a building where a magistrate was present. The court said that the defendant was not taken before the magistrate, even though "the magistrate was in the building. Clearly, no intervening events broke the connection between appellant's arrest and confession." *Green v. State,* 615 S.W.2d at 709. Thus, in *Green,* the mere presence of a magistrate, absent the defendant's being taken before him, was not an intervening circumstance. This case presents an analogous circumstance respecting the presence of a magistrate. Although Robertson was at the Woods' home for several hours, there is no showing that he performed any official duties or that he advised Woods of his rights as required by TEX.CODE CRIM.PROC. ANN. art. 15.17 (Vernon Supp.1991). In *Green,* before holding that the State failed to show that the statement was admissible, the court quoted the United States Supreme Court, saying, "To admit [appellant's] confession in such a case would allow 'law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the "procedural safeguards" of the Fifth.'" *Green v. State,* 615 S.W.2d at 709, *citing Dunaway v. New York,* 442 U.S. at 219, 99 S.Ct. at 2260. The State failed to carry its burden of showing that

intervening circumstances purged the taint of the illegal arrest.

Considering the relevant factors, the State has failed to show that Woods' production of the stolen property was so attenuated from the illegal arrest that it was entitled to be admitted in evidence. The trial court, therefore, erred in admitting the stolen item into evidence.

 We briefly address Woods' argument that the evidence is insufficient to support his conviction.[4] In considering this contention, we consider all evidence, even that which was erroneously admitted at trial. *Lucas v. State,* 721 S.W.2d 315, 318 (Tex.Crim.App.1986); *Collins v. State,* 602 S.W.2d 537, 539 (Tex.Crim.App.1980) (Roberts, J., concurring). The evidence shows that at 12:44 a.m. the radar detector was taken. This activated the tracking device. The police tracked the device to Woods' home only fifteen minutes later. The lights in the front portion of the house were on when one of the police officers approached the house and knocked on the front door. Only Woods and his brother, Preston, were up and awake. Dr. Woods and his wife were asleep upstairs. After consent to search was obtained, one of the officers was assigned to watch Woods and the rest of the family while other officers conducted the search. Woods' personal bedroom was cluttered with numerous wallets, vehicle radio equipment, and various other radios, stereo and electronic equipment. Subsequently, Woods voluntarily led the police to the stolen radar detector and retrieved it from under a workbench. He gave no explanation for his possession of the item. Where there is independent evidence of a burglary, unexplained possession of the recently stolen goods may constitute sufficient evidence to support a conviction. *Harris v. State,* 656 S.W.2d 481,

---

**4.** Because we determine that the trial court incorrectly overruled Woods' motion to suppress evidence, we reverse and remand for a new trial. *Lucas v. State,* 721 S.W.2d 315, 318 (Tex. Crim.App.1986); *Adams v. State,* 639 S.W.2d 942, 943 (Tex.Crim.App.1982). However, since Woods has argued that the evidence is insufficient to support his conviction, we must address this contention. We are required to do so because if we determine that the evidence is insuf-

ficient to sustain a conviction, the proper remedy is to reverse the case and order that a judgment of acquittal be entered in the trial court. *Bryant v. State,* 574 S.W.2d 109, 112 (Tex.Crim. App. [Panel Op.] 1978); *Taylor v. State,* 626 S.W.2d 543, 545 (Tex.App.—Texarkana 1981, pet. ref'd). If we so determine, no further prosecution could result in this case. *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).

483 (Tex.Crim.App.1983); *Williams v. State*, 621 S.W.2d 613, 614 (Tex.Crim.App. [Panel Op.] 1981), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1755, 72 L.Ed.2d 165 (1982). Furthermore, his act in handing over the stolen item is indicative of a distinct and conscious assertion of right to the property. *Jayroe v. State*, 707 S.W.2d 652, 654 (Tex.App.—Texarkana 1986, pet. ref'd). The evidence is sufficient to sustain the conviction.

We reverse the judgment of the trial court and remand the cause for a new trial.

CORNELIUS, Chief Justice, dissenting.

I dissent from the reversal of this case and the reasoning on which it is based. I conclude that Woods' production of the stolen device was sufficiently attenuated from any illegality that it was wholly independent and therefore admissible in evidence.

In determining whether a confession or evidence obtained after an illegal arrest is sufficiently attenuated from the arrest to permit its introduction, we consider whether *Miranda*-type warnings were given; the temporal proximity of the arrest and the production of the evidence; the presence of any intervening circumstance; and the purpose and flagrancy of any official misconduct. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Self v. State*, 709 S.W.2d 662 (Tex.Crim.App.1986).

Woods was arrested and given his warnings shortly after 1:00 a.m. He retrieved the stolen radar device at about 6:00 a.m., some five hours later. Temporal proximity, however, is not determinative alone. *Bell v. State*, 724 S.W.2d 780, 788 n. 4 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). More important is the third factor, the presence of intervening circumstances during the time lapse that might have broken the causal connection between the arrest and the evidence. An intervening circumstance that may be sufficient to purge the taint of an illegal arrest may be either an appearance before a magistrate, termination of the illegal custody, consultation with counsel, or a volunteered statement not made in response to police interroga-

tion. *Bell v. State, supra*, at 789. Here, the police summoned a magistrate to the scene, and he was present when Woods produced the stolen item. This was an intervening circumstance which further attenuated the act of producing the evidence from the arrest.

The final factor to be considered is the purpose and flagrancy of any illegal police conduct. Although the arrest here was warrantless, it was based on sufficient probable cause. The officers had unequivocal evidence that property taken in a vehicle burglary that occurred only fifteen minutes earlier was located in Woods' home. When the officers arrived at the house, it was one o'clock in the morning. Woods and his brother, Preston, were the only persons in the house who were awake, and they were the two persons arrested. After obtaining consent to search the home, police officers gave Woods his warnings against self-incrimination. The police summoned a magistrate to the scene. There was no police misconduct. Thus, Woods' arrest was with probable cause and without a "quality of purposefulness." *Self v. State, supra.*

In summary, Woods was given *Miranda*-type warnings; nearly five hours elapsed between his arrest and the retrieval of the stolen radar detector; a magistrate was brought to him and was on the scene when the item was produced; and there was no police misconduct. Additionally, it appears that Woods decided to retrieve the stolen item to keep his mother and father from being arrested, rather than as a result of any illegality of his warrantless arrest. Woods himself testified that he led police to the item because he feared that his parents would be arrested. He stated that he did not want them jailed over something they had nothing to do with, and that he decided he should spare them by producing the stolen item.

For all these reasons, I find no causal connection between the warrantless arrest of Woods and his surrendering the stolen device. Woods' act was not produced by the illegality of the arrest, but by other factors which operated on his own volition.

*Maixner v. State,* 753 S.W.2d 151 (Tex. Crim.App.1988); *Self v. State, supra.*

*Green v. State,* 615 S.W.2d 700 (Tex. Crim.App. [Panel Op.] 1980), cited by the majority, is inapposite. There, although there was a magistrate in the courthouse, the defendant was not in the presence of, nor did he converse with, the magistrate. Here, Woods was in the presence of the magistrate for an hour and a half or more, and he conversed freely with him about the charges which were being brought against him. *Foster v. State,* 677 S.W.2d 507 (Tex. Crim.App.1984), also cited by the majority, is not in point at all.

The majority opinion states that the magistrate did not act in his official capacity and that he was summoned at the invitation of police officers. There is no support in the record for the first statement. The magistrate was there in his official capacity. As for being summoned by the police, that does not taint the magistrate's actions. Indeed, the law requires that the police summon a magistrate. TEX.CODE CRIM. PROC.ANN. art. 14.06 (Vernon Supp.1991).

For the reasons stated, I would hold that Woods' production of the stolen device was so attenuated from any illegality that it was of an independent origin and was admissible into evidence.