Robert Lee OWENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–642–CR.

Court of Appeals of Texas,
Corpus Christi.

April 21, 1994.

Thomas K. Robinson, Miller & Robinson, Gonzales, for appellant.

W.C. Kirkendall, Dist. Atty., Frank Follis, Asst. Dist. Atty., Seguin, for appellee.

Before SEERDEN, DORSEY, and YAÑEZ, JJ.

## OPINION

DORSEY, Justice.

Robert Lee Owens pleaded guilty to capital murder pursuant to a plea bargain after his motion to suppress his confession was overruled. He appeals the trial court's refusal to suppress his confession. Owens claims error, arguing he was arrested under

a faulty arrest warrant, and that his incriminating statement resulted from his illegal arrest. He assails the warrant on the basis that the supporting affidavit did not reveal probable cause. We affirm.

Two murders were committed on or about May 1, 1992 in Waelder, in Gonzales County. On May 2 the police discovered an abandoned car near Interstate 10 with a purse and a rifle on the front seat. After identifying the car, an officer was sent to find the owner, Jesusa Ramirez. At Ramirez's house, the officer discovered two bodies, Ramirez, a seventy-year old woman, and Modesto Gonzalez, a fifty-seven year old man, both of whom had been beaten to death at Ramirez's house. It was apparent that one or more rings had been removed from Ramirez's right hand.

D.J. Brzozowski, Sheriff of Gonzales County, Officer Schelcher, and Deputy Measom were involved in the initial investigation. Measom was sent to question witnesses in the Waelder area. Owens's name surfaced during the initial investigation. While Measom was trying to locate Owens, he spoke to Constable Vandle of Flatonia, Fayette County. On May 3, Measom and Vandle tried, unsuccessfully, to locate Owens who was last seen in Flatonia on May 1. Owens was thought to be with "Bubba" Wilson Winkfield who left for San Antonio on May 1.

Measom and Brzozowski went to San Antonio on May 4 to find and question Winkfield. Winkfield told the officers he took Owens to San Antonio on May 1 and Owens had shown Winkfield some rings. Winkfield said he didn't know where Owens was staying in San Antonio.

The officers left San Antonio on Interstate 10 but pulled off the road outside the city to finish some paperwork. While they were parked, Winkfield's car drove by with Winkfield and another man in the car. The officers followed. Winkfield pulled into a truck stop near the Bexar County and Guadalupe County line. The officers also pulled in nearby and stopped.

Brzozowski spoke to Winkfield, and Measom spoke to the passenger who said he was Robert Owens. Brzozowski checked for warrants on Owens and was advised that Owens was wanted on two outstanding warrants; one from Fayette County for misdemeanor theft and another, a Governor's Blue Warrant, for parole violation.

Owens was arrested at 4:30 p.m. for misdemeanor theft and taken to Seguin, in Guadalupe County, where he was read his rights by a municipal judge. Owens was then taken to Gonzales where he was turned over to the Fayette County authorities. The following morning, May 5, 1992, Owens was taken before a magistrate in Fayette County and again his rights were read to him.

Brzozowski continued his investigation and found physical evidence linking Owens to the double murder; Owens sold jewelry in San Antonio after the murder that was identified as belonging to one of the victims. After developing the jewelry evidence, on the morning of May 6, Brzozowski questioned Owens at the Fayette County jail about the double murder and Owens offered to help find the murder weapon.[1]

Brzozowski made notes during the course of their conversations and search. Between noon and one o'clock in the afternoon, Brzozowski returned Owens to the Fayette County jail and they went over his notes. The sheriff then gave the notes to a secretary to type in statement form. When Brzozowski returned to the jail around four, he retrieved the statement and met with Owens. The statement was typed on a preprinted form which includes a recitation of *Miranda* warnings at the top of the first page. Brzozowski

---

1. When I went in to talk to Mr. Owens, when he was brought into the interrogation room or whatever you want to call it there, well, I asked him ... did he understand his rights. I knew that we had arraigned him in Guadalupe County and he had been arraigned there [Fayette County] the next morning after that and this was the next morning. He said he understood his rights. I told him I had a few things I would like to ask him.... I told him about the ring, that we had recovered the ring, and I told him about the two deceased and that our thought, from the medical report, we thought that they had been beat in the head with a piece of pipe and he said, no, it wasn't a piece of pipe; it was a piece of a two-by-four. He said, 'I can take you to the piece of two-by-four.'

testified that before Owens signed the statement, he read it to Owens and Owens read the statement to himself.[2] In addition, Brzozowski says he read Owens his rights and asked him to sign a card which included a statement that the person signing the card has been read his rights by the named officer and "knowingly, intelligently and voluntarily waive[s] any and all rights set out in the warning." The card is noted signed at 4:25 p.m. May 6, 1992.

The State's evidence at the suppression hearing included copies of the warnings certificates from Guadalupe and Fayette County, the card Owens signed, the arrest warrant, and the complaint supporting the arrest warrant. Several officers testified at the hearing about the investigation of the lawn mower theft and the investigation of the double murder. Brzozowski testified that he was told of the blue warrant and theft warrants over the radio; no blue warrant was introduced into evidence.

Owens' testimony at the suppression hearing contradicted the documentary evidence and the testimony of Brzozowski and other law enforcement officers. He claims he was not taken before the magistrate in either Seguin or in Fayette County and claims that he was questioned on Tuesday, May 5, rather than on Wednesday, May 6. He denies that he signed the certification sheets from the magistrate's offices; he further denies that he read the preprinted warnings on the first page of his statement, and claims that he was not asked whether he understood his rights before he was questioned and was not read his rights until after he signed his statement at four p.m. on May 6.

Several statutory requirements must be met before an accused's statement can be used against him. After arrest, the arrestee must be taken before a magistrate without undue delay and the magistrate must inform him of the charges against him and of his

*Miranda* rights. TEX.CODE CRIM.PROC.ANN. art. 15.17(a) (Vernon Supp.1994). Additionally, a written statement is not admissible at trial unless the statement shows that the accused was taken before a magistrate and given the warnings pursuant to article 15.17 or received warnings from the person taking the statement and that the accused waives such rights. TEX.CODE CRIM.PROC.ANN. art. 38.22 § 2(a) & (b) (Vernon 1979). Appellant's statement contains all of the required warnings.

■ We review the trial court's decision at a suppression hearing for an abuse of discretion. The trial judge as trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991); *Clark v. State*, 548 S.W.2d 888, 889 (Tex.Crim.App.1977). The evidence adduced at a suppression hearing is viewed in the light most favorable to the trial court's ruling. *Crooks v. State*, 821 S.W.2d 666 (Tex. App.—Houston [14th Dist.] 1991, no pet.).

■ The trial court found the affidavit supporting Owens's misdemeanor theft warrant to be adequate. We disagree. The Fourth Amendment requires that any warrant issued be based on probable cause. Probable cause may be established by an affidavit containing sufficient information to support an independent judgment by a neutral and detached magistrate that probable cause exists. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 564–65, 91 S.Ct. 1031, 1034–35, 28 L.Ed.2d 306 (1971). An affidavit based on hearsay information may be sufficient if the person supplying the information is reliable. *See Janecka v. State*, 739 S.W.2d 813, 824 (Tex.Crim.App.1987) (en banc) (per curiam) (reliability minimally established by recitation that unnamed informant longtime resident of city, reputably employed, no criminal record); *Bellah v. State*, 653 S.W.2d 795, 796 (Tex.Crim.App.1983) (en

---

**2.** Appellant's statement contains all of the required warnings preprinted at the top of the page. Appellant signed each page of the three page statement as did Brzozowski and a witness, Cindy Martinez. Directly above appellant's signature is the preprinted statement, "I have read this statement consisting of *three (3)* page(s), each page of which bears my signature, and I do

affirm that all facts and statements contained herein are true and correct." Page three contained the typed, not preprinted, statement, "I can read and write. I have read the above statement and it is true and correct. The above statement was also read to me by Sheriff D.J. Brzozowski."

banc) (per curiam) (corroboration of unnamed informant's story comported with other evidence set out in affidavit sufficient to establish reliability).

█ For purposes of this appeal, we assume that the arrest was unlawful because the misdemeanor theft warrant was issued without an affidavit sufficient to establish probable cause.[3] We expressly do not address the validity of the Governor's Blue warrant. Because we assume the arrest was unlawful, we now determine whether the confession should have been excluded because it was the product of the illegal arrest.

█ If the arrest is illegal, then the statement is inadmissible if it resulted from the illegal arrest. TEX.CODE CRIM.PROC.ANN. art. 38.23.[4] It is the State's burden to prove that the confession did not result from the illegal arrest. *See Lalande v. State*, 676 S.W.2d 115, 116 (Tex.Crim.App.1984) (State must show legality of warrantless arrest); *Darden v. State*, 783 S.W.2d 239, 242 (Tex.App.—Corpus Christi 1989, pet. ref'd).

█ The exclusionary rule exists to deter government overreaching and wrongdoing during the investigation of a crime. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963). "[V]erbal evidence which derives . . . from an unlawful entry and an unauthorized arrest . . . is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* Statements which follow an illegal arrest are not *per se* inadmissible unless they are a product of the illegality and therefore not voluntarily given. *Id.* at 488, 83 S.Ct. at 417–18.

█ To break the causal chain between the illegal arrest and the confession, the confession must be sufficiently an act of free will on the part of the defendant to purge the taint of the initial illegality. *Brown v. Illinois*, 422 U.S. 590, 598–99, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975). The *Brown* court set out factors to be considered in each case to determine whether the subsequent statement is truly voluntary or a result of the illegality: whether *Miranda* warnings were given, the time lapse between the arrest and the confession, the presence of intervening circumstances, and the purpose and the flagrancy of the official misconduct. *Id.*, 422 U.S. at 603–05, 99 S.Ct. at 2261; *Autry v. State*, 626 S.W.2d 758, 764 (Tex. Crim.App.1982), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *Darden*, 783 S.W.2d at 243. The factors are not exhaustive and no single factor is dispositive. *Id.* (citing *Juarez v. State*, 758 S.W.2d 772 (Tex.Crim.App.1988)).

█ Merely reading *Miranda* warnings will not attenuate the taint, but giving the warnings may indicate whether the confession was obtained as a result of the illegal arrest. *Taylor v. Alabama*, 457 U.S. 687, 689, 102 S.Ct. 2664, 2666, 73 L.Ed.2d 314 (1982); *Bell v. State*, 724 S.W.2d 780, 788 (Tex.Crim.App.1986) (en banc), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Darden*, 783 S.W.2d at 243. According to the documentary evidence and the testimony of several law enforcement personnel, Owens was taken before two different magistrates and warned, he was read his statement which included the warnings and Brzozowski asked Owens if he understood the warnings he had previously received before Brzozowski questioned him. Brzozowski read the *Miranda* warnings to him again

---

**3.** The arrest warrant for the lawn mower theft was issued on the complaint of R.A. Vandel, a Fayette County constable. The affidavit stated in part:

> Reliable informant stated Robert Lee Owens, Jr. had stolen a lawn mower and the mower was seen in the back of a red and white pickup at the McMurray residence in Flatonia. Flatonia PD confirmed a lawn mower had been reported stolen. Investigation revealed that pickup belonged to Turner Hardaway in Waelder—I observed the lawn mower at the

Hardaway residence and Hardaway stated Robert Lee Owens, Jr. wanted to sell him the mower.

The warrant was issued at 9:00 a.m. May 4, 1992.

**4.** No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

before Owens signed his statement. It is not necessary to rewarn a defendant arrested on one charge and warned of his rights before questioning him about other uncharged offenses. *Allridge v. State,* 762 S.W.2d 146, 157–58 (Tex.Crim.App.1988) (citing *Dunn v. State,* 721 S.W.2d 325, 338 (Tex.Crim.App. 1986)); *Simpson v. State,* 603 S.W.2d 862, 865 (Tex.Crim.App.1980). Appellant was given the required warnings.

■■■ The second, and least important, factor involves the time between the illegal arrest and the confession. *Bell,* 724 S.W.2d at 788. Time alone is insufficient to purge the taint. *Williams v. State,* 787 S.W.2d 181, 182 (Tex.App.—Beaumont 1990), *pet. dism'd as improvidently granted,* 817 S.W.2d 63 (Tex.Crim.App.1991) (en banc). However the longer the time between the arrest and the confession, the more likely that the confession is not a result of the illegal conduct. *Juarez,* 758 S.W.2d at 781; *Darden,* 783 S.W.2d at 243. In this case, Owens was arrested at 4:30 p.m. on May 4 and not questioned until nine a.m. May 6; his statement was not signed until approximately 4:25 p.m. May 6. Over 36 hours elapsed between arrest and questioning, and nearly 48 hours elapsed between arrest and Owens signing his statement. The amount of time between the arrest and confession suggests that the statement was not a product of the illegal arrest.

■■■ Intervening circumstances are events which suggest that the confession was not a direct result of the arrest. *Id.* In this case, Owens appeared before two magistrates between the time of his arrest and his statement; bond was set; he volunteered information about the murder weapon immediately upon questioning and offered to help find it. Prior to signing his statement, he had three hours, alone, to think about what he told Brzozowski. Immediately prior to signing his statement he was warned again of his *Miranda* rights. The circumstances suggest that the arrest itself did not cause Owens to make and sign his statement.

■■■ The fourth and final factor is the purpose and flagrancy of official misconduct. *Id.* at 244. This factor weighs heaviest in

evaluating the attenuation of taint. *Self v. State,* 709 S.W.2d 662, 668 (Tex.Crim.App. 1986). The misconduct at issue is appellant's arrest pursuant to a warrant obtained without an affidavit sufficient to establish probable cause. Additionally, at the time of the arrest, the officer was told over the radio that a blue warrant had also been issued. The arresting officer did not obtain either warrant but merely reacted to the outstanding warrants reported to him over his radio by arresting Owens. Although Brzozowski benefitted from the fact that Owens was in jail, he had no part in obtaining the initial warrant and no knowledge of whether it was supported by probable cause. Brzozowski's arrest of appellant and delivery to Fayette County authorities based on two reported warrants for his arrest is proper police work and is not misconduct, although one of the warrants was faulty. This factor supports attenuation of the taint between the arrest and later statement. Point two is overruled.

Because of our disposition of point two, we do not decide point one, the initial legality of appellant's arrest pursuant to the governor's blue warrant. Tex.R.App.P. 90(a).

We AFFIRM the judgment.