Darrell Wayne GREGG, Appellant,

v.

The STATE of Texas, Appellee.

No. 63685.

Court of Criminal Appeals of Texas, En Banc.

Feb. 1, 1984.

Rehearing Denied April 18, 1984.

Robert V. Garcia, Jr., Odessa, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

After a trial before the court, Darrell Wayne Gregg, appellant, was convicted of committing the offense of aggravated robbery. Punishment was assessed at 15 years' confinement in the penitentiary.

In two grounds of error, appellant complains of the admission into evidence of his written confession. We hold that his written confession should not have been admitted into evidence at his trial and will reverse the conviction for this error.

The facts of the crime appellant was convicted of committing are not in dispute.

During the early evening hours of September 25, 1978, several patrons and an employee of the CB Lounge of Odessa were robbed at gunpoint by three masked persons. No one in the lounge was ever able to positively identify any of the robbers.

On September 28, 1978, at approximately 4:30 o'clock p.m., five members of the Ector County Sheriff's Department went to a certain location in Odessa to execute four arrest warrants.[1] After arrival at that location, they observed two females and a male, who was other than appellant, walking from a trailer house toward a parked automobile. When the three persons saw the deputy sheriffs, they immediately ran back inside the trailer house. Thinking these persons might be three of the four persons that they were looking for, the deputy sheriffs hurriedly pursued them into the trailer house, where appellant was situated. After investigation and questioning, it was determined by the deputy sheriffs that none of the persons named in the arrest warrants were inside of the trailer house. Nevertheless, "but for investigation purposes," appellant and the other three persons were taken to the Sheriff's office.

When one of the females, who was characterized as "a runaway", resisted being taken to the Sheriff's office, she was handcuffed. Appellant and the other two persons did not make any discernible objections to being taken to the Sheriff's office. However, the record indicates that it would not have done them any good to have objected because the deputy sheriffs would not have permitted them to leave, either at the trailer house or at the Sheriff's office.

After approximately 2 hours at the Sheriff's office, and after interrogation by deputy sheriffs, appellant was taken before a Magistrate where he received a "Miranda" warning. Thereafter, at approximately 10:00 o'clock p.m., appellant made a confession[2] to a deputy sheriff who put it in written form. Appellant himself wrote out in longhand part of the written confession.

Appellant contends on appeal that he was under unlawful arrest or unlawful seizure from the time he was taken to the Sheriff's office until he gave his confession. He asserts that this unlawfulness caused his confession to become inadmissible evidence at his trial. In support of his contention, appellant implicitly relies upon the Fourth Amendment to the United States Constitution and expressly relies upon decisions of the United States Supreme Court which have interpreted the Fourth Amendment.

The State counters that appellant was neither arrested *nor* seized by the deputy sheriffs inside of the trailer house, but, instead, consented to being taken to the Sheriff's office and also consented to remaining there. Under the facts and circumstances of this case, we are unable to agree with the State's position.

■ We first point out that in the context of the Fourth Amendment to the United States Constitution, a person is "seized"[3] whenever his "freedom of movement is restrained." See *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Reid v. Georgia*, 448 U.S. 151, 100 S.Ct. 2752, 65 L.Ed.2d 890.

1. The arrest warrants named Perry Kennedy, Stanley Eldridge or Etheridge, Jimmy Sartain, and James Clay Maston. Because the record is silent on why the arrest warrants were obtained for these persons, and the affidavits for the arrest warrants and the arrest warrants are not in the record of appeal, we are unable to state just exactly what caused the arrest warrants to issue. The record, however, implicitly indicates that these persons were suspected of having been participants in the robbery that occurred in the lounge.

2. Appellant's confession is the only piece of evidence which connects him to the offense for which he was convicted.

3. Because our decision turns upon whether appellant was unlawfully "seized," and not whether he was unlawfully "arrested," we will use in this opinion the word "seized" and not the word "arrested."

We next point out that the protections afforded by the Fourth Amendment against unreasonable searches and seizures may, like other constitutional rights, be waived. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The general test of waiver of a constitutional right is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It is axiomatic, where the claim is made that the defendant "consented" to a seizure, that the consent must have been given freely and voluntarily before it is deemed effective. The burden of proof is upon the prosecution. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968).

We hold that from the totality of the circumstances presented in the instant case, appellant did not freely and voluntarily consent to his seizure by the deputy sheriffs at his residence or during the time he was in the custody of the deputy sheriffs. The threatening presence of five deputy sheriffs, presumably armed, their hurried intrusion and subsequent warrantless search of appellant's residence, their handcuffing of one of the occupants, and the lapse of approximately two and one-half hours before appellant was taken before a Magistrate, all persuasively lead us to conclude that a reasonable person would have believed that he had been "seized," as that term is used for Fourth Amendment purposes. Appellant did not consent to the seizure. The State's contention to the contrary is overruled.

The State argues that if this Court finds appellant's seizure was not consensual, which we have found, nevertheless, because there were certain circumstances and events present in the case, the taint on the confession was attenuated. We disagree.

Under its argument, the State acknowledges and recognizes the general rule that a confession which flows from an illegal arrest or seizure becomes inadmissible evidence. It asserts, however, that it has met the four factors identified in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and reiterated in *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), thus rendering the confession admissible evidence. The four factors are:

(1) whether Miranda warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and,

(4) the purpose and flagrancy of the official misconduct.

Under its argument, the State points to the following which it claims were sufficient circumstances or events to remove the taint from the confession: after arriving at the courthouse, appellant signed a written consent form for deputy sheriffs to search his residence; appellant was taken before a Magistrate where his rights were fully explained to him, after which he waived his rights; two other persons, Massengale and Fisher, had given confessions to participating in the robbery, and appellant, prior to confessing, read Massingale's statement. In light of *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), we are compelled to disagree with the State that it has met the four factors set out above.

In *Taylor v. Alabama,* supra, the Supreme Court held that before a tainted confession may be legally sanitized, the prosecution must establish that the confession "originated outside the aura of coercion that surrounds the illegal detention." See Levinson, "Fourth Amendment—A Renewed Plea for Relevant Criteria for the Admissibility of Tainted Confessions," *The Journal of Criminal Law and Criminology* 1408, 1420 (1982).

We find that the facts in *Taylor v. Alabama,* supra, and those at bar are significantly similar. Because the facts in *Taylor v. Alabama,* supra, have been adequately stated in the dissenting opinion in *Gant v. State,* 649 S.W.2d 30, 38 (Tex.Cr. App.1983), we do not repeat them here. It

is sufficient to state that the defendant in *Taylor v. Alabama,* supra, like appellant, was unlawfully seized and he thereafter gave a confession which was later held by the Supreme Court to be inadmissible evidence.

In *Taylor v. Alabama,* supra, the prosecution argued that there were sufficient intervening circumstances or events which broke the causal connection between the illegal seizure and the confession. The Supreme Court, however, disagreed.

We will first state *seriatim* each argument the prosecution made in *Taylor v. Alabama,* supra, which is duplicated in this cause, in support of the claim that there were sufficient intervening circumstances and events to remove the taint from Taylor's confession, and will then state why the Supreme Court rejected the argument. The prosecution argued in *Taylor v. Alabama,* supra, that the defendant received a "Miranda [4] warning" before he confessed, and waived his rights. The Supreme Court held that the giving of the "Miranda" warning, standing alone, will not be sufficient to purge the taint of an illegal arrest. The prosecution next argued that six hours had elapsed between the arrest and the giving of the confession. The Supreme Court held: "However, a difference of a few hours is not significant where, as here, petitioner was in police custody, unrepresented by counsel, and he was questioned on several occasions, fingerprinted, and subjected to a lineup." Although the record does not reflect that appellant was fingerprinted or subjected to any type lineup prior to the giving of the confession, nevertheless, it does reflect or indicate that appellant was, except for the time he was before the Magistrate, continuously interrogated while unrepresented by counsel.

One other significant fact shared by this cause and *Taylor v. Alabama,* supra, is that in the latter case the defendant was visited by his girlfriend and her male companion prior to giving the confession. In this cause, the record reflects that appellant's grandmother attempted to see him; however, she was told by a deputy sheriff,[5] who did not testify, that she could not see him. The deputy told her that "there wasn't anything I could do for Darrell until after he was indicted." Appellant's grandmother's testimony was unrefuted. In *Taylor v. Alabama,* supra, the Supreme Court rejected the meeting between the defendant and his girlfriend and her male companion as a significant intervening circumstance or event. We find that the failure of the deputy sheriff to allow appellant's grandmother to visit him is indicative of the coercive atmosphere appellant was subjected to prior to him giving his confession.

■ The State also argues that appellant's reading of Massengale's confession before he gave his confession is a significant intervening circumstance or event. However, the State does not explain how this could serve as an intervening circumstance or event which would have been sufficient to remove the taint from the confession. We find that the record clearly reflects that at the time appellant read the statement he had been seized, was under the exclusive control of members of the Sheriff's office, and was unaided by counsel. Furthermore, before reading the other person's confession, appellant was unaware that he had been implicated in the robbery. Considering the intimidating atmosphere and the coerciveness of the situation, we are unable to state that appellant had total freedom of choice in giving the confession after he had read Massengale's confession. The State's argument is rejected.

■ The State next argues that when appellant signed the consent to search form

---

4. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. The trial judge apparently recognized the deputy sheriff from the description given by appellant's grandmother. In response to appellant's counsel's question whether the court would take judicial notice of the deputy's identity, the trial judge answered:

"I couldn't take judicial notice but I have a strong suspicion it was Mr. Register."

**130**

shortly after he had arrived at the Sheriff's office, this was a significant intervening circumstance or event which removed the taint. We disagree. Overlooked by the State is the principle of law that, standing alone, consent to search occurring after an illegal seizure cannot provide the measure of attenuation. In *Paprskar v. State,* 484 S.W.2d 731, 738 (Tex.Cr.App.1972), the following was pointed out:

> The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given ... Where, however, in addition to the fact that the consenter was under arrest at the time of an alleged voluntary consent to search other coercive factors appear, i.e., display of weapons, etc., the likelihood that consent was freely given is not strong.

In this instance, we are unable to find that appellant freely and voluntarily signed the consent to search form.

For all of the above reasons, we find that the State did not establish that appellant was outside the influence of the police custody for any significant amount of time prior to when he gave his confession. We, therefore, hold that the State has failed to dissipate the taint, of the illegal seizure; appellant's inculpatory written confession should have been suppressed. E.g., *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1981); *Ussery v. State,* 651 S.W.2d 767 (Tex.Cr. App.1983); *Coleman v. State,* 643 S.W.2d 947 (Tex.Cr.App.1982). Appellant's first two grounds of error are sustained.

Appellant asserts in his last ground of error that if this Court holds that the confession was inadmissible evidence, which we have done, then the evidence is insufficient to sustain the conviction. This contention is without merit. The erroneous admission into evidence of the confession was only trial error. *Collins v. State,* 602 S.W.2d 537 (Tex.Cr.App.1980); *Schmidt v. State,* 659 S.W.2d 420 (Tex.Cr.App.1983). Appellant's ground of error is overruled.

For the reasons stated, the judgment of conviction is reversed and the cause remanded to the trial court.

TOM G. DAVIS, J., concurs in the result.

W.C. DAVIS, McCORMICK and CAMP-BELL, JJ., dissent.