STATE of Wisconsin, Plaintiff-Respondent,

v.

Wilfred E. TOBIAS, Defendant-Appellant.

Court of Appeals

*No. 95–0324–CR. Submitted on briefs July 21, 1995.—Decided August 29, 1995.*

(Also reported in 538 N.W.2d 843.)

541

On behalf of the defendant-appellant, the cause was submitted on the brief of *Barbara A. Cadwell* of White Lake.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Wilfred Tobias appeals his judgment of conviction and sentence for burglary, theft, criminal damage to property and aggravated battery. The jury found Tobias guilty of these offenses in connection with a break-in and beating at the L'Abbe Insurance Agency of Tomahawk. At trial, the prosecution relied in part on incriminating statements Tobias made following an illegal arrest. Tobias argues that his statements were not sufficiently attenuated from his illegal arrest and, therefore, the trial court erred when it allowed the statements to be admitted at trial. We reject this argument and affirm Tobias's conviction and sentence.

At issue is whether Tobias's incriminating state-
ments, made approximately one and one-half hours
after he was arrested, should have been suppressed as
the fruit of an illegal arrest. The trial court held that
Tobias had been illegally arrested without probable
cause. However, the trial court found that the incrimi-
nating statements need not be suppressed because the
facts supported application of the attenuation doctrine,
an exception to the exclusionary rule. Under this doc-
trine, a court need not hold that all evidence is fruit of
the poisonous tree simply because it would not have
come to light but for the illegal actions of the police.
*Brown v. Illinois*, 422 U.S. 590, 599 (1975) (citing *Wong
Sun v. United States*, 371 U.S. 471, 487-88 (1963)). The
confession need not be suppressed if it was obtained by
means sufficiently attenuated so as to be purged of the
taint of the illegal arrest. *State v. Anderson*, 165 Wis.
2d 441, 447-48, 477 N.W.2d 277, 281 (1991).

The trial court first examined whether Tobias was
under arrest when he was transported to the police
station for questioning. Within thirty minutes after the
crime was discovered, officer John DuPlayee encoun-
tered Tobias at Tobias's stepfather's apartment and
told him to come down to the station. The trial court
found that Tobias was arrested when this uniformed
officer frisked, handcuffed and transported Tobias to
the station for questioning. The State has not appealed
this finding.

Next, the trial court found DuPlayee lacked proba-
ble cause for the arrest. The State urges this court to
reexamine the issue of probable cause in light of facts
discovered at trial, citing *State v. Truax*, 151 Wis. 2d
354, 444 N.W.2d 432 (Ct. App. 1989). However, because

we affirm the conviction on grounds that Tobias's incriminating statements were sufficiently attenuated from his arrest, we will not re-examine the issue of probable cause. Instead, we will assume for purposes of this appeal that the trial court's finding that the arrest was illegal because DuPlayee lacked probable cause was correct.

Because we have assumed for purposes of this appeal that DuPlayee lacked probable cause to arrest, the next issue is whether the incriminating statements should have been suppressed as fruit of the illegal arrest or whether an exception to the exclusionary rule applies. On this issue, the trial court ruled that the attenuation doctrine was applicable and that the statements were therefore admissible. We agree.

The primary concern in attenuation cases is whether the evidence objected to was obtained by exploitation of a prior police illegality or instead by means sufficiently attenuated so as to be purged of the taint. *Anderson*, 165 Wis. 2d at 447-48, 477 N.W.2d at 281. In *Anderson*, our supreme court reaffirmed that the analytical framework to apply in attenuation cases was set forth in *Brown*. *Anderson*, 165 Wis. 2d at 447, 477 N.W.2d at 281. Under *Brown*, the threshold requirement is the voluntariness of the challenged statements. *United States v. Patino*, 862 F.2d 128, 132 (7th Cir. 1988). The remaining factors bearing on admissibility are the temporal proximity of the illegal conduct and the confession, the presence of any intervening circumstances, and the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-04. The burden of showing admissibility rests on the prosecution. *Id.* at 604.

Whether evidence should be suppressed because it was obtained pursuant to a Fourth Amendment violation is a question of constitutional fact. *Anderson*, 165 Wis. 2d at 447, 477 N.W.2d at 280. We independently review constitutional fact questions. *Id*.

We begin with the threshold requirement that the statements were voluntary. *Brown*, 422 U.S. at 601-02. The test for voluntariness is whether the totality of the circumstances indicate that the statements were freely made. *United States v. White*, 979 F.2d 539, 543 (7th Cir. 1992). This assessment calls for a balancing of the personal characteristics of the confessor with the pressures brought to bear upon him. *Barrera v. State*, 99 Wis. 2d 269, 291, 298 N.W.2d 820, 830 (1980). The personal characteristics to be considered are the confessor's age, education and intelligence, physical and emotional condition and prior experience with the police. *Id*. at 291-92, 298 N.W.2d at 830.

At the time he was interrogated, Tobias was a twenty-two-year-old felon who had recently been released after serving four years in the state prison system. Tobias testified at the motion hearing that he had a learning disability and had been in special education classes for most of his education. He emphasized his limited capabilities, testifying at one point, "I don't think I graduated from first grade." Tobias also testified that he took prescription drugs to deal with the "spirits" he sometimes sees. Tobias stated that on the day of the interrogation, he had not taken his medication because it had been lost three days earlier when he "came in drunk and put them up and forgot where I put [the pills]." Tobias also testified that when he was talking to the police, he felt dizziness.

While Tobias's testimony suggests he was incapable of making a voluntary statement, the manner in which he gave his testimony demonstrated his ability to understand instructions and to explain himself. The trial court observed that at one point in his testimony, Tobias was able to identify the number of minutes in an hour and when asked, calculated the number of minutes in one and one-half hours. Tobias's testimony also reveals his ability to understand facts and make arguments. At one point, describing the interrogation, Tobias stated, "[DuPlayee] told me I could stop any time I want. He said I could get an attorney and the questioning will stop. But he never did say I could walk out again. He never said I could walk out the door any time I wanted to or I would have walked out right then." This statement and others lead this court to conclude that although Tobias may have learning disabilities, he possessed the requisite ability to make a voluntary statement. This conclusion is strengthened by the trial court's observation that Tobias was familiar with police and the court process because he had been convicted and served time in prison.

Tobias's personal characteristics must be balanced against the pressures brought to bear upon him. At the station, DuPlayee read Tobias a *Miranda*[1] waiver form that listed each of Tobias's rights. Tobias testified, "[DuPlayee] read them to me and explained them the best he could." Tobias acknowledged on cross-examination that DuPlayee "said I didn't have to talk to him, that I didn't have to talk if I don't want to." Tobias's testimony indicates he was properly informed of his rights under *Miranda*. Additionally, there is no evi-

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

dence DuPlayee verbally or physically threatened Tobias to make him confess. Finally, DuPlayee testified Tobias had access to comforts such as a telephone, restroom and cigarettes, although he chose not to use them. These facts, balanced against Tobias's personal characteristics, lead us to conclude the statements were given voluntarily.

Having concluded Tobias's incriminating statements were made voluntarily, we examine the remaining *Brown* factors bearing on admissibility. First, we look at the temporal proximity of the illegal arrest and the statements. *Id.* at 603. One commentator has noted that although the Court in *Brown* did not directly relate the fact that Brown had been in police custody for only two hours when he confessed to the issue of temporal proximity, such a brief detention would appear to raise the inference that sufficient time had not passed to permit attenuation of the taint of the illegal arrest. William D. Levinson, *Supreme Court Review: Fourth Amendment—A Renewed Plea for Relevant Criteria for the Admissibility of Tainted Confessions: Taylor v. Alabama, 102 S.Ct. 2664 (1982),* 73 J. CRIM. L. 1408, 1413 (1982). However, other cases have held that a short period of time is not dispositive on the question of taint. *See Patino,* 862 F.2d at 133 n.3 (7th Cir. 1988). The temporal relationship between the arrest and the confession may be an ambiguous factor. *Dunaway v. New York,* 442 U.S. 200, 220 (1979) (Stevens, J., concurring). If there are no relevant intervening circumstances, a prolonged detention may be a more serious exploitation of an illegal arrest than a short one. *Id.*

Tobias was in custody for approximately one and one-half hours before he made his incriminating statements. We conclude that this time period was long enough to suggest dissipation of the taint of the illegal arrest, especially in light of the conditions under which Tobias made his statements. While under the strictest custodial conditions, a short period of time may not be long enough to purge the initial taint of an illegal arrest, nonthreatening, congenial conditions that exist during detention may outweigh the relatively short period of time between the initiation of the detention and the admission. *Anderson*, 165 Wis. 2d at 449, 477 N.W.2d at 281 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 107-08 (1980)).[2] The record indicates that Tobias's interrogation was nonthreatening. DuPlayee testified at the motion hearing that Tobias had access to a restroom, cigarettes and a telephone throughout the interrogation. He also testified that the exchange with Tobias was like a regular conversation, except that Tobias was a little quiet. Tobias's testimony in no way indicates he felt threatened by DuPlayee. The nonthreatening conditions of the interrogation support our conclusion that the one and one-half hours that elapsed between Tobias's arrest and his statements weighs in favor of attenuation.

---

[2] In *Rawlings v. Kentucky*, 448 U.S. 98, 107 (1980), the Supreme Court held that a 45-minute illegal detention was sufficiently attenuated from the defendant's admission. Other cases have found attenuation where the temporal proximity was similar. *See United States v. Edmondson*, 791 F.2d 1512, 1515-16 (11th Cir. 1986) (approximately 45 minutes); *United States v. Milian-Rodriguez*, 759 F.2d 1558, 1565 (11th Cir. 1985) (one hour).

The second *Brown* factor is the presence of intervening circumstances. *Id.* at 603-04. During the time DuPlayee was questioning Tobias at the station, officers received permission from Tobias's stepfather to search the apartment. There, the officers discovered commemorative coins and a key reported missing from the insurance office, as well as a blood-stained vest. Thus, the officers obtained this incriminating evidence independent of the arrest. The officers communicated these discoveries to DuPlayee, who began asking Tobias about the items. According to DuPlayee's testimony at the motion hearing, "[Tobias] was looking at the floor and suddenly looked at me and said, what do you expect, the guy keeps $3,000 worth of silver in there."

DuPlayee's testimony indicates that the confrontation with this untainted evidence was the intervening circumstance that induced Tobias to confess. Several jurisdictions have held confrontations may constitute intervening circumstances under the *Brown* analysis. " 'A defendant's confrontation with untainted evidence, which induces in the defendant a voluntary desire to confess, may be a legitimate intervening circumstance' to dissipate the taint of the defendant's earlier illegal arrest." *People v. Thomas*, 542 N.E.2d 881, 888 (Ill. App. 1989) (quoting *People v. White*, 512 N.E.2d 677, 689 (Ill. 1987)).[3]

In *Thomas*, the defendant made incriminating statements after hearing a tape recording of his codefendant's incriminating statement. *Id.* at 884-85. The Illinois Appeals Court held that confrontation with the tape-recorded statement was an intervening circumstance which, when viewed in conjunction with

---

[3] *See also Commonwealth v. Wright*, 332 A.2d 809, 811 (Pa. 1975); *State v. Stevens*, 574 So. 2d 197, 204 (Fla. App. 1991).

other circumstances surrounding Thomas's inculpatory statement, purged the taint of his allegedly illegal arrest. *Id.* at 889. Therefore, the court concluded, Thomas's statements were properly admitted at trial. *Id.* at 888-89.

■

Just as Thomas's confrontation with his co-defendant's statement was an intervening circumstance that purged the taint of Thomas's illegal arrest, Tobias's confrontation with untainted evidence legally obtained from his stepfather's apartment was an intervening circumstance that purged the taint of his illegal arrest. Tobias, like Thomas, incriminated himself not because of the illegal arrest, but because he was confronted with information pointing toward his involvement in the crime. This possibility was contemplated by the United States Supreme Court in *Brown*, where it observed that it is entirely possible that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. *Brown*, 422 U.S. at 603. Because Tobias's incriminating statements were an act of free will induced not by the illegal arrest but by the confrontation with untainted evidence, we conclude this *Brown* factor weighs in favor of attenuation.

The final factor to consider under *Brown* is the purpose and flagrancy of the official misconduct. *Id.* at 604. In this case, the police conduct was not flagrant. DuPlayee calmly approached Tobias and told him to come to the station. DuPlayee did not run at Tobias, throw him to the ground, threaten him with a gun or commit other acts courts have identified as flagrant misconduct.[4] Additionally, there was no element of

---

[4] In contrast, in *Brown v. Illinois*, 422 U.S. 590, 592 (1975), the defendant was climbing the last of the stairs leading to the

surprise because deputy Donald Friske had already questioned Tobias about the incident in an earlier visit to the apartment. Testimony from both DuPlayee and Tobias indicates the arrest and subsequent questioning were conducted in a calm manner, without threats or violence.

The Supreme Court has indicated that to determine the purpose and flagrancy of the conduct, it is also appropriate to examine the circumstances under which the defendant was taken into custody. *See Taylor v. Alabama*, 457 U.S. 687, 693 (1982). In *Taylor*, the Supreme Court found flagrant and purposeful police conduct where the police "effectuated an investigatory arrest without probable cause, based on an uncorroborated informant's tip, and involuntarily transported petitioner to the station for interrogation in the hope that something would turn up." *Id.* DuPlayee's actions can be distinguished from the police actions in *Taylor*. DuPlayee did not arrest Tobias based on an uncorroborated tip. Instead, DuPlayee arrested Tobias because Tobias fit the description given by the victim, was seen walking not far from the scene of the crime and had given unsatisfactory answers to Friske when asked about his activities that evening. While it is a close call whether these facts established probable cause, it is clear DuPlayee did not simply arrest Tobias in the hope that something would turn up. Indeed, the incriminat-

---

rear entrance to his apartment when he happened to glance at the window near the door. He saw, pointed at him through the window, a revolver held by a stranger who said, "Don't move, you are under arrest." The Supreme Court noted that the manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion. *Id.* at 605.

ing evidence seized from Tobias's stepfather's apartment would have been seized regardless of whether Tobias was arrested, because Tobias's stepfather gave his consent for the search. For these reasons, we conclude DuPlayee's actions did not constitute the flagrant and purposeful misconduct that would indicate there was insufficient attenuation.

Our analysis of the *Brown* factors leads us to conclude there was sufficient attenuation between the illegal arrest and Tobias's statements, especially because the facts indicate the statements were obtained not by exploitation of the arrest, but because Tobias was confronted with untainted, incriminating evidence against him. Because there was attenuation, the statements need not have been suppressed and were properly admitted at trial. Accordingly, Tobias's conviction and sentence are affirmed.

*By the Court.*—Judgment affirmed.