Affirmed and Opinion filed January 13, 2009








 

Affirmed
and Opinion filed January 13, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00468-CR

____________

 

ABELINO MONGE, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

 

 



 

On Appeal from the
185th District Court

Harris County,
Texas

Trial Court Cause
no. 1034794

 



 

O P I N I
O N

Following
a plea of guilty, appellant, Abelino Monge, was convicted of capital murder and
was incarcerated to serve a life sentence.  In one issue, appellant challenges
the trial court=s denial of his motion to suppress his recorded confession. 
He contends he was unlawfully arrested, his subsequent confession was tainted
under the Afruit of the poisonous tree@ doctrine, and the State did not
prove attenuation of the taint.  We affirm.

            BACKGROUND

On July
12, 2005, Detective Mark Reynolds arrived at a murder scene in which the victim
had been shot twice in the back.  Although the initial investigation did not
produce any suspects, Reynolds later found, in the victim=s back yard, a cell phone that had
been issued to appellant.  Reynolds obtained the phone records and learned
that, on the day of the murder, the cell phone had been used to place calls to,
and receive calls from, the victim.  The phone records also listed calls
between appellant, the victim, and a third individual, Margil Ochoa.

Reynolds
drove to appellant=s workplace on the morning of July 21, 2005, to question
appellant about the cell phone.  Appellant responded that his cell phone had
been stolen, but he voluntarily accompanied Reynolds to the sheriff=s department for further
questioning.  Upon arrival, appellant was placed in a small windowless room,
where he was briefly questioned.  Appellant denied any involvement in the
murder.  He voluntarily provided a DNA saliva sample, consented to a search of
his vehicle and residence, and submitted to a polygraph examination that ended
at approximately 6:00 p.m.  Having been told he was free to leave, appellant
instead fell asleep on the floor of the room where he had been interviewed.[1] 
There would be no further contact between appellant and the law-enforcement
officers until the following morning.








Meanwhile,
in a different interview room, the detectives were separately questioning
Margil Ochoa, who appeared to be more forthcoming with information than
appellant had been.  At approximately midnight on July 22, Ochoa admitted his
and appellant=s involvement in the murder, specifically identifying appellant as the Ashooter.@  After several more hours of
questioning, Ochoa signed a written confession that again implicated him and
appellant in the murder.  At no time did the deputies procure an arrest warrant
for appellant.

At approximately 7:00 a.m., the
district attorney agreed to accept capital murder charges against appellant and
Ochoa.  Reynolds informed appellant he was under arrest, and placed him in
handcuffs.  While Reynolds was processing the paperwork, a second set of detectives
decided to question appellant again.  Appellant was given Miranda
warnings.  He was then advised that Ochoa was also under arrest, and that Ochoa
had implicated appellant in the crime.  Specifically, one of the detectives
told appellant:

I was here
late last night too whenever all this was going on and I went and picked up
Ochoa and he=s trying to help hi[m]self.  You know what I=m saying? . . .

. . . .

I=m going to tell you up front . . . that your
fall partner has given you up.[2] He=s given every detail about what took place from the
time you guys left climbing over the fence, just about knocking him over, going
down, sliding down the bayou, swimming in the bayou . . . .  You know, they,
they know everything at this point and all it is, to getting you convicted. . .
.  And you know here you have, uh one, one guy that=s trying to help hi[m]self, he=s concerned about his family, he doesn=t wanna spend the rest of his life in jail, you know
he=s honestly trying to help hi[m]self.  You know he=s admitting that, you know, this just wasn=t supposed to happen like this. . . .  You know what I
mean?  We have his story.

. . . .

But I can tell you . . . everything that he=s said is collaborated [sic] by the dead guy[=]s girlfriend, so we know that he=s telling the truth from that point on.

 

After learning that Ochoa
had implicated him, appellant confessed to shooting the victim twice.  The
interview, including appellant=s confession, was recorded and videotaped.








Appellant
was indicted for capital murder.  Before trial, appellant moved to suppress his
confession, contending it was tainted by a warrantless, unlawful arrest. 
Appellant did not testify at the suppression hearing, which spanned several
days.  The trial court, which ultimately denied the suppression motion, found
that appellant was free to leave the sheriff=s department at all times until he
was actually placed in custody at 4:00 a.m. on July 22.  The court further
concluded that the detectives improperly failed to procure an arrest warrant,
and that the warrantless arrest was not excused by article 14.04 of the Code of
Criminal Procedure.  However, the court determined that the taint of the warrantless
arrest was attenuated.

Appellant
indicated his intent to appeal the trial court=s ruling, and then pled guilty to the
charged offense.  The court sentenced appellant to confinement for life in the
Texas Department of Criminal Justice.  This appeal ensued.  In one point of
error, appellant contends the trial court abused its discretion by denying his
motion to suppress because the State failed to prove attenuation of the taint
of his unlawful arrest.

                                                       STANDARD
OF REVIEW








We
employ a bifurcated standard of review to consider a trial court=s ruling on a motion to suppress
evidence.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000); Turner v. State, 252 S.W.3d 571, 576 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  We will defer almost entirely to
the trial court=s findings of historical fact that are supported by the
record, especially when the findings relate to an evaluation of credibility and
demeanor.  See Turner, 252 S.W.3d at 576 (citing Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We afford the same level of
deference to rulings on mixed questions of law and fact when the resolution of
those issues turns upon an evaluation of credibility and demeanor.  See
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman,
955 S.W.2d at 89.  By contrast, we review de novo the issues that do not
depend upon credibility and demeanor.  See Turner, 252 S.W.3d at 576.

The
trial court is the sole fact-finder at a suppression hearing and may freely
believe or disbelieve all or part of the evidence presented.  See Ross,
32 S.W.3d at 855; Weems v. State, 167 S.W.3d 350, 354B55 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  Therefore, we review the
evidence in the light most favorable to the trial court=s ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006); Rothstein v. State, 267 S.W.3d
366, 371 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  We will sustain the
trial court=s ruling if it is reasonably supported by the record and is correct under
any applicable legal theory.  See Ross, 32 S.W.3d at 855B56.

                                                                    ANALYSIS

The Afruit of the poisonous tree@ doctrine generally precludes the use
of evidence, both direct and indirect, obtained following an illegal arrest.  See
Wong Sun v. United States, 371 U.S. 471, 484 (1963); State v. Iduarte,
268 S.W.3d 544, 550 (Tex. Crim. App. 2008).  Here, the State does not challenge
the illegality of appellant=s warrantless arrest, which did not fit within any of the
recognized exceptions to the warrant requirement.  Instead, the State contends
the nexus between the unlawful arrest and appellant=s confession was so attenuated as to
dissipate the taint of the prior illegality.  See Wong Sun, 371 U.S. at
487B88.  After reviewing the record, we
agree.








Evidence that is sufficiently
attenuated from the unlawful arrest is not considered to have been obtained
therefrom.  See Sims v. State, 84 S.W.3d 805, 810 (Tex. App.CHouston [1st Dist.] 2002, no pet.). 
The prosecution carries the burden of proving attenuation.  See Brown v.
Illinois, 422 U.S. 590, 604 (1975); Garcia v. State, 3 S.W.3d 227,
242 (Tex. App.CHouston [14th Dist.] 1999), aff=d, 43 S.W.3d 527 (Tex. Crim. App. 2001).  In deciding
whether appellant=s confession, which was given following an illegal arrest,
was sufficiently attenuated as to permit the use of the confession at trial, we
are to consider the following factors:

(1)       whether
Miranda warnings were given;

(2)       the
temporal proximity of the arrest and the confession;

(3)       the
presence of intervening circumstances; and

(4)       the
purpose and flagrancy of the official misconduct.

See Brown, 422 U.S. at 603B04; Bell v. State, 724
S.W.2d 780, 788 (Tex. Crim. App. 1986); Weems, 167 S.W.3d at 359.  These
four factors do not necessarily carry equal weight.  See Bell, 724
S.W.2d at 788B90 (generally describing the relative importance of each factor); Self
v. State, 709 S.W.2d 662, 668 (Tex. Crim. App. 1986).  We will apply each
of these factors, in turn, to the evidence adduced at the suppression hearing.

A.        Whether Miranda Warnings were Given

The
giving of Miranda warnings, standing alone, does not sufficiently
attenuate the taint of an arrest in violation of the Fourth Amendment.  See
Brown, 422 U.S. at 603.  As the Court of Criminal Appeals observed, Athe right to be free from warrantless
arrest is at least equal in magnitude to the state and federal constitutional
right to be free from unreasonable searches and seizures. . . . [T]he State cannot
violate the Fourth Amendment with impunity by washing its hands in the
procedural waters of the Fifth Amendment[.]@ Bell, 724 S.W.2d at 787. 
However, Miranda warnings, while not the only consideration, remain an important
factor in determining whether a confession was obtained through exploitation of
an illegal arrest.  See Brown, 422 U.S. at 603; Little v. State,
758 S.W.2d 551, 566 (Tex. Crim. App. 1988); Self, 709 S.W.2d at 666.








At the
beginning of the recorded interview, appellant was given Miranda
warnings.  Appellant acknowledged that he understood those rights, and he
implicitly waived those rights by proceeding to answer the detectives= questions.  See Turner, 252
S.W.3d at 583B84; State v. Oliver, 29 S.W.3d 190, 193 (Tex. App.CSan Antonio 2000, pet. ref=d).  Appellant notes that, unlike
several other attenuation cases, he received only one Miranda
admonition.  See Little, 758 S.W.2d at 566 (three Miranda
warnings); Bell, 724 S.W.2d at 785B86 (at least four warnings); Self,
709 S.W.2d at 666 (three warnings); Weems, 167 S.W.3d at 359 (at least
three warnings).  However, we do not perceive these authorities as holding that
the first factor of Brown v. Illinois requires multiple Miranda warnings. 
The fact that repeated warnings may have been sufficient in other cases
does not necessarily mean, in the context of this attenuation analysis, that
multiple warnings are mandatory.  See Bell, 724 S.W.2d at 788
(asking simply whether Miranda warnings were given); see also Rosalez
v. State, 875 S.W.2d 705, 722 (Tex. App.CDallas 1993, pet. ref=d) (resolving first factor in State=s favor because defendant received Miranda
warnings immediately after arrest, and indicated he understood his rights).

This
first factor weighs in the State=s favor.

B.        Temporal Proximity between
Arrest and Confession

Next, we
analyze the temporal proximity between the arrest and the confession.  This
factor, which has been described as Aambiguous,@ is given the least weight among the
four Brown v. Illinois considerations.  See Weems, 167 S.W.3d at
359; Darden v. State, 783 S.W.2d 239, 243 (Tex. App.CCorpus Christi 1989, pet. ref=d).  Generally, longer time periods
tend to favor a finding of attenuation.  See Townsley v. State, 652
S.W.2d 791, 797 (Tex. Crim. App. 1983).  By contrast, when the time between the
arrest and confession is short, it may be inferred that the defendant was not
given time to reflect upon his situation following his arrest.  See Weems,
167 S.W.3d at 359; see also Juarez v. State, 758 S.W.2d 772, 781 (Tex.
Crim. App. 1988), overruled on other grounds by Boyle v. State, 820
S.W.2d 122 (Tex. Crim. App. 1989) (A[T]he shorter the time, the more
likely it is that the taint of the illegal arrest or stop has not been purged.@).








Here,
the trial court found that appellant was in custody as of 4:00 a.m. on July 22
but that he was not informed of his arrest until 6:30 a.m., roughly
two-and-one-quarter hours prior to the interview that produced his recorded
confession.[3]  Courts that
have considered similar time frames consistently have resolved this factor in
the accused=s favor.  See Bell, 724 S.W.2d at 788 (one-and-a-half to three
hours); Self, 709 S.W.2d at 666 (two hours); Weems, 167 S.W.3d at
360 (two to two-and-a-half hours).

Although
the Atime proximity@ element is Agenerally not a strong determining
factor per se,@ this second factor tends to favor appellant, against admission of the
confession.  See Bell, 724 S.W.2d at 788B89.  However, because each factor
need not be resolved in the State=s favor before a confession may be
admitted, we must consider the third and fourth Brown factors.  See
Juarez, 758 S.W.2d at 780.

C.        Presence of Intervening
Circumstances

Generally,
a confession obtained through interrogation following an illegal arrest should
be excluded unless subsequent Aintervening events break the causal connection between the
illegal arrest and the confession so that the confession is sufficiently an act
of free will to purge the primary taint.@  Townsley, 652 S.W.2d at 796B97 (citing Taylor v. Alabama,
457 U.S. 687 (1982)).  Similarly, intervening events that flow from the illegal
arrest usually do not, by themselves, attenuate the taint.  Bell, 724
S.W.2d at 789.  








The
United States Supreme Court has not defined what constitutes an Aintervening event@ that sufficiently purges the taint
of an illegal arrest.  The Texas Court of Criminal Appeals has identified some
significant intervening events as including the accused=s appearance before a magistrate,
termination of the illegal custody, consultation with counsel, or a volunteered
statement that was not made in response to police interrogation.  See id.
at 789 n.5.  Here, the trial court found, and the State acknowledges, that none
of these specifically-enumerated events intervened to dissipate the taint of
appellant=s warrantless arrest.

However, several jurisdictions have
repeatedly held that confrontation of the accused with untainted
information of his guiltCsuch as the confession of an accompliceCmay qualify as an intervening
circumstance, if the untainted evidence was acquired apart from the illegal
arrest.  See State v. Brunetti, 901 A.2d 1, 25 (Conn. 2006) (concluding
defendant=s confession was prompted not by unlawful detention but by lawful
discovery of untainted, incriminating evidence); State v. Tobias, 538
N.W.2d 843, 847B48 (Wis. Ct. App. 1995) (same); Thorson v. State, 653
So. 2d 876, 886 (Miss. 1994) (same); People v. Gabbard, 398 N.E.2d 574,
579 (Ill. 1979) (same); Allen v. Cupp, 426 F.2d 756, 759 (9th Cir. 1970)
(AWe conclude . . . that the confession
was not the product of the illegal arrest and custody, but the product of
appellee=s own decision to confess after his
companion had done likewise.@).  In adopting this rule, the Wisconsin Supreme Court
concluded:

[T]estimony
indicates that the confrontation with this untainted evidence was the
intervening circumstance that induced Tobias to confess.  Several jurisdictions
have held confrontations may constitute intervening circumstances under the Brown
analysis.  A>A defendant=s
confrontation with untainted evidence, which induces in the defendant a
voluntary desire to confess, may be a legitimate intervening circumstance= to dissipate the taint of the defendant=s earlier illegal arrest.@

. . . .

. . .  This possibility was contemplated by the United
States Supreme Court in Brown, where it observed that it is entirely
possible that persons arrested illegally frequently may decide to confess, as
an act of free will unaffected by the initial illegality.  Because Tobias=s incriminating statements were an act of free will
induced not by the illegal arrest but by the confrontation with untainted
evidence, we conclude this Brown factor weighs in favor of attenuation.








 

Tobias, 538 N.W.2d at 847B48 (citations omitted).  

In 1984, the Texas Court of Criminal
Appeals was presented with a similar situation but declined to find
attenuation.  See Gregg v. State, 667 S.W.2d 125 (Tex. Crim. App. 1984),
overruled on other grounds by Russell v. State, 717 S.W.2d 7 (Tex. Crim.
App. 1986).  However, we believe Gregg is factually distinguishable. 
Therein the Court of Criminal Appeals recited that Gregg was suddenly, and
unlawfully, seized at night by five presumably-armed deputy sheriffs, and was
taken to the sheriff=s office to investigate as part of the investigation of a
robbery.  See id. at 127B28.  After being interrogated, Gregg was taken before a
magistrate to receive a Miranda warning.  See id. at 127.  In the
interim, two other persons had confessed to participating in the robbery.  See
id. at 128.  After reading one of the other confessions, Gregg likewise
confessed to the robbery.  See id.  On appeal, he contended that his
confession, which flowed from an illegal seizure, should not have been admitted
into evidence at trial.  See id. at 127B28.  The State responded that the
confession was admissible because it had proven attenuation of the taint under Brown
v. Illinois.  See id. at 128.  The Court of Criminal Appeals
disagreed:

In light of
Taylor v. Alabama, we are compelled to disagree with the State that it
has met the four [Brown] factors set out above.

In Taylor v. Alabama, the Supreme Court held
that before a tainted confession may be legally sanitized, the prosecution must
establish that the confession Aoriginated
outside the aura of coercion that surrounds the illegal detention.@

 

Id. (citations omitted).  Under this Taylor v.
Alabama framework, the Court concluded that Gregg was not shown to be Aoutside the influence of the police
custody@ prior to his confession, and held
that the State had not demonstrated attenuation of the taint.  See id.
at 130.  Thus, the Court of Criminal Appeals was not convinced that, under the
facts presented, Gregg=s reading of an accomplice=s confession was a significant
intervening circumstance that removed the taint from the confession:








We find that the record clearly reflects that at the
time appellant read the statement he had been seized, was under the exclusive
control of members of the Sheriff=s
office, and was unaided by counsel.  Furthermore, before reading the other
person=s confession, appellant was unaware that he had been
implicated in the robbery.  Considering the intimidating atmosphere and the
coerciveness of the situation, we are unable to state that appellant had
total freedom of choice in giving the confession after he had read Massengale=s confession.

 

Id. at 129 (emphasis added).








However,
Gregg did not announce a blanket rule that, as a matter of law,
confronting an accused with untainted incriminating evidence cannot be a
legitimate intervening event in any case.[4] 
After all, whether a confession was produced by free will must be answered upon
the facts of each case and does not rely on a Atalismanic test.@  See Brown, 422 U.S. at 603. 
Instead,  we read Gregg as holding that, in light of the flagrant and
coercive misconduct of the law-enforcement personnel, Gregg=s confession could not be said to
have been Athe product of a free will.@  See Gregg, 667 S.W.2d at
129; Brown, 422 U.S. at 603.  For example, we note that Gregg was taken
before a magistrate before his confession,[5]
a fact which has been held to constitute a Asignificant intervening@ event.  See Bell, 724 S.W.2d
at 789 n.5.  Given the Gregg Court=s disdain for the sheriffs= misconduct, however, even Gregg=s appearance before a magistrate was
insufficient to dissipate the taint of the illegal seizure.  See Gregg,
667 S.W.2d at 130.  Thus, although Gregg=s appearance before a magistrate did
not persuade the Court of Criminal Appeals to find attenuation of the taint
under the facts of that case, such an event continues to be a significant
intervening event in other cases.  See Bell, 724 S.W.2d at 789 n.5. 
Similarly, Gregg should not be read as rejecting the proposition that, in
an appropriate case, an accused=s confrontation with untainted
evidence could serve as a legitimate intervening event.

Here,
appellant repeatedly denied any involvement in the murder until he learned that
Ochoa had implicated him in the crime.  During a restroom break, appellant saw
that Ochoa had been arrested.  He was told that Ochoa had Agiven [him] up,@ and that Ochoa had identified
appellant as the Amain guy@ during the shooting.  The detectives then advised appellant
of specific details from Ochoa=s confession: AHe=s given every detail about what took
place from the time you guys left climbing over the fence, just about knocking
him over, going down, sliding down the bayou, swimming in the bayou[.]@ Finally, appellant was told that
Ochoa=s account had been corroborated by
another witness.  Appellant then confessed to the murder.  Under these facts,
we concludeCas have courts in other jurisdictions in similar casesCthat appellant=s confession was not the result of
his unlawful arrest but, rather, the product of appellant=s voluntary decision to confess after
learning his accomplice had done likewise.  See People v. Holman, 620
N.E.2d 1222, 1230 (Ill. App. Ct. 1993); People v. Dale, 545 N.E.2d 521,
533 (Ill. App. Ct. 1989); People v. Thomas, 542 N.E.2d 881, 889 (Ill.
App. Ct. 1989); Brewer v. State, 611 S.W.2d 179, 182 (Ark. 1981); Allen,
426 F.2d at 759; see also State v. Stevens, 574 So. 2d 197, 204 (Fla.
Dist. Ct. App. 1991) (holding that defendant=s confrontation with his mother=s incriminating statement constituted
an intervening event); Commonwealth v. Wright, 332 A.2d 809, 811 (Pa.
1975) (AWright denied any involvement in the
shooting until he was confronted with his accomplice.  It was this
confrontation, rather than any exploitation of the circumstances of the arrest,
which prompted his confession.@).








We
therefore conclude that appellant=s confrontation with Ochoa=s untainted confession[6]
acted as a significant intervening event.  Accordingly, this third attenuation
factor weighs in the State=s favor.  

D.        Purpose and Flagrancy of
Official Misconduct

The
fourth Brown factor, in which courts examine the extent of
law-enforcement misconduct, is one of the most important considerations in an
attenuation analysis.  See Bell, 724 S.W.2d at 789; Self, 709
S.W.2d at 668.  When official misconduct is the most flagrantly abusive, the
standard for the State to prove attenuation is elevated to require the Aclearest indications of attenuation.@[7]  See Bell, 724 S.W.2d at
789.  Examples of such abusive conduct may include Areliance on factors in making an
arrest which were so lacking in indicia of probable cause as to render belief
in its existence entirely unreasonable; an arrest effectuated as a pretext for
collateral objectives; or an arrest which is unnecessarily intrusive on personal
privacy.@  Id.  Similarly, the taint
may be unattenuated if the accused was arrested for no apparent justification
and with the sole intent to extract a confession by exploitation.  See id.
at 789B90.








In
arguing flagrancy of the deputies= misconduct, appellant reminds us
that, as of the time of his confession, he had been kept in a small windowless
room for twenty-two hours and, during that time, had eaten only one meal. 
However, although these considerations may be pertinent in a Jackson v.
Denno analysis,[8] appellant
does not contend that his confession  was involuntary as a result of coercion. 
Instead, appellant concedes that he voluntarily accompanied the detectives to
the sheriffs= department, and that he freely consented to a DNA saliva test, search of
his residence and vehicle, and polygraph examination.  Although his movement within the
sheriffs= departmentCa secure buildingCwas restricted, appellant concedes
that he was free to leave the facility until at least midnight on the second
day, July 22.[9]  Thus, we
must conclude that appellant voluntarily remained at the sheriffs= department until he was actually
placed in custody.

Appellant
also acknowledges that his arrest, though warrantless, was supported by
probable cause.  The trial court found that Detective Reynolds failed to
procure a warrant because A[i]n his mind he believed that he had probable cause to
arrest the defendant and that a warrant was not necessary.@  The record also supports this
finding, as Reynolds testified that he felt he could arrest appellant because
of Ochoa=s confession.  This belief appears,
from the record, to have been founded upon Reynolds=s misunderstanding of the scope of
Article 14.03(a)(6).  Based on the record, the trial court therefore concluded
that the officers had not engaged in flagrant misconduct.








We
consider the facts of this case to be analogous to the police conduct involved
in Bell, in which the arresting officer had probable cause to arrest
Bell, but failed to procure a warrant because the officer believed that a
warrant exception applied.  See Bell, 724 S.W.2d at 785B87.  The Court of Criminal Appeals
classified that police conduct as falling Asomewhere in between a technical
violation and . . . flagrant conduct[.]@ Id. at 790.  The Court
concluded that the police conduct did not decisively weigh against attenuation
of the taint.  See id.

Ultimately,
based on its resolution of the Brown factors, the Bell Court
declined to find attenuation.  See id. at 790B91.  Although we classify the
official misconduct here as analogous to that involved in Bell, however,
we do not reach the same ultimate attenuation conclusion after weighing the Brown
factors.  In Bell, the Court found no intervening circumstance that
would militate in favor of admission of the confession.  See id. at 789,
790.  By contrast, we have held that appellant=s confrontation with Ochoa=s untainted confession served as a
legitimate intervening event that was sufficient Ato break the causal connection@ between the illegal arrest and
confession.  See id.

Having
weighed the pertinent Brown factors, then, we conclude on the record
presented that the taint of appellant=s unlawful arrest was attenuated.

                                                                CONCLUSION

Although
appellant was unlawfully arrested without a warrant, we hold the State carried
its burden to prove, under Brown v. Illinois and Bell v. State,
that the taint of the illegal arrest was attenuated.  Therefore, we affirm the
trial court=s ruling denying appellant=s motion to suppress his recorded
confession.

/s/      J. Harvey Hudson

Senior Justice

 

Panel consists of Justices Anderson
and Frost, and Senior Justice Hudson.*

Publish.  Tex. R. App. P. 47.2(b).









            [1]  Both parties
agree that appellant was free to leave until at least midnight on July 22, six
hours after the polygraph examination concluded.





            [2]  Emphasis added.





            [3]  Appellant argues
that, although he was considered to be in custody at 4:00 a.m., we should analyze
the Atime proximity@
factor beginning at 6:30 a.m., at which time appellant first became aware that
he had been arrested.  We agree.  This factor focuses on the defendant=s ability to reflect upon his situation, and the
consequences of confession, after his arrest.  See Darden, 783 S.W.2d at
243.  Because appellant was not aware that he had been arrested until 6:30
a.m., it follows that his period of self-reflection would not begin until then,
either.  See id.





            [4]  In 1993, citing Gregg,
we declined to find attenuation from the mere fact that an accomplice gave an
incriminating statement.  See Griffin v. State, No. C14-91-01227-CR,
1993 WL 46554, at *4 (Tex. App.CHouston [14th
Dist.] Feb. 25, 1993, pet. ref=d) (not
designated for publication).  However, the record there did not clearly show
that Griffin, the accused, was even aware of his companion=s incriminating statement.  See id.  In
addition, we noted that the incriminating statement itself may have resulted
from an illegal arrest.  See id.; see also Taylor, 457 U.S. at
692B93 (declining to characterize, as intervening event,
evidence that itself was fruit of illegal arrest).  Therefore, Griffin
can be distinguished and is not controlling here.





            [5]  See Gregg,
667 S.W.2d at 127.





            [6]  There has been
no suggestion that Ochoa=s written confession resulted from an illegality,
because a warrant exception applies to Ochoa=s
arrest.  See Tex. Code Crim. Proc. Ann. art. 14.03(a)(6) (Vernon Supp.
2008) (AAny peace officer may arrest, without warrant . . . a
person who makes a statement to the peace officer that would be admissible
against the person under Article 38.21 and establishes probable cause to
believe that the person has committed a felony.@).





            [7]  This statement,
from Bell, implies that there may be some overlap between the third and
fourth Brown factors.  See also Morelos v. State, 772 S.W.2d
497, 505 (Tex. App.CHouston [14th Dist.] 1989, pet. ref=d) (addressing both factors together, and noting that A[f]ree and voluntary execution of a written consent to
the search is an intervening factor that weighs heavily in favor of the State,
but allegations of official misconduct in obtaining the consent would
necessarily weaken the consent@) (citation
omitted).





            [8]  Jackson v.
Denno, 378 U.S. 368 (1964); see Smith v. State, 779 S.W.2d 417, 428B29 (Tex. Crim. App. 1989) (evaluating voluntariness of
confession by, inter alia, level of physical deprivation brought to bear
on accused).





            [9]  At argument,
counsel for appellant rejected the suggestion that appellant was in custody
following the polygraph examination at 6:10 p.m.  Instead, it was contended
that, although appellant chose to remain at the sheriff=s= department, a
reasonable person would have believed he was free to leave the facility.  See
Turner, 252 S.W.3d at 577.





            * 
Senior Justice J. Harvey Hudson sitting by assignment.